IN the INTEREST OF:
N.L.W. and J.D.W.,

J.D.W., Natural Father, Appellant,

v.

Mississippi County Juvenile
Office, Respondent.

No. SD 34860 and SD 34861

Missouri Court of Appeals,
Southern District,
Division Two.

Filed: September 20, 2017

Application for Transfer to Supreme
Court Denied October 11, 2017

Application for Transfer Denied
December 19, 2017

Appellant's attorney: Stephen R. Southard, Cape Girardeau.

Respondent's attorney: Daniel F. Norton, Sikeston.

1. Father and son share the same initials.

2. M.D.W. ("Mother") is the Children's biological mother. Mother's rights were terminated as a part of the proceedings described herein. Mother is not a party to this appeal, and we refer to evidence about Mother only as is necessary to address Father's appeal.

WILLIAM W. FRANCIS, JR., J.

J.D.W. ("Father") appeals the judgments terminating his parental rights to his daughter, N.L.W., and his son, J.D.W.[1] ("the Children").[2] Finding Father has failed to convince us of any trial court error warranting reversal, we affirm the judgments of the Juvenile Division of the Circuit Court of Mississippi County (the "trial court").[3]

## Factual and Procedural Background

■■■ Our recitation of the relevant facts is in accord with the principle that we view the evidence in the light most favorable to the judgment. *See J.A.R. v. D.G.R.*, 426 S.W.3d 624, 626 (Mo. banc 2014). "Appellate courts will defer to the trial court's credibility assessments. When the evidence poses two reasonable but different inferences, this Court is obligated to defer to the trial court's assessment of the evidence." *Id.* (internal quotation and citation omitted). "'All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached.'" *Id.* (quoting Rule 73.01(c)).[4] "[W]e are not free to credit evidence or inferences that favor the terminated parent. To the contrary, we must ignore these." *In re Adoption of C.M.*, 414 S.W.3d 622, 629 (Mo.App. S.D. 2013) (internal quotation and citation omitted). "In reviewing questions of fact, the reviewing court is to recognize that the circuit court is free to disbelieve any, all, or none of the evidence, and it is not the reviewing appellate court's role to re-evaluate the evidence

3. A petition was filed on behalf of each child and a separate judgment entered for each, though the cases were heard at a single trial. The individual cases for each child were consolidated for this appeal.

4. All rule references are to Missouri Court Rules (2017).

through its own perspective." *J.A.R.*, 426 S.W.3d at 627. Viewed in this context, the following facts are pertinent to the current appeal.

The record reveals that J.D.W. is the biological father of N.L.W., born in 2005, and J.D.W., born in 2007 ("the Children"). On April 14, 2014, the Children came under the jurisdiction of the Juvenile Division of Mississippi County. The Children were taken into protective custody after Mother's arrest for possession of drug paraphernalia; unsanitary home conditions; educational neglect; Mother's positive tests for methamphetamines and other drugs; and three counts of endangering the welfare of a child. Father was in the Mississippi Count Jail at the time, awaiting trial on a charge of sexual abuse in the first degree with a victim under the age of 18, pursuant to section 566.100,[5] having been arrested on November 29, 2012. The Children remained in the custody of the Children's Division of the Missouri Department of Social Services (the "Children's Division") from April 14, 2014, through the date of the termination of parental rights hearing.

Father remained in jail until he was released on bond on September 9, 2014. Following a jury trial on May 7, 2015, Father was found guilty of the class C felony of sexual abuse in the first degree. On July 9, 2015, Father was sentenced to seven years in the Missouri Department of Corrections ("DOC") with a release date in October 2020. Father would potentially be eligible for parole as of June 2018, if he were to complete a sex offender program.[6]

A total of six Written Service Agreements ("WSAs") were implemented for Father from the time the Children were placed into protective custody, through Father's incarceration.[7] Pursuant to the agreements, Father agreed to write letters to the Children at least weekly, and later monthly; maintain contact with the Children's Division; maintain safe and adequate housing; obtain and maintain employment; attend all FST[8] meetings and court hearings; attend parenting classes; and obtain information about parenting and fatherhood programs while in prison. The Children's Division also requested Father attend a sex offender program.

Father failed to comply with most of the goals outlined in the WSAs. Father wrote letters to the Children while he was in jail awaiting trial, and again after he was transferred to the DOC. However, he did not write any letters while he was out of jail on bond awaiting trial and sentencing. Father was subject to a no-contact order with the Children due to his sexual abuse of a minor; Father was advised by Children's Division representatives to continue writing to the Children, that the letters would be delivered to the Children once the no-contact order was no longer in place, and that writing would show his attempts at continuing to have contact with the Children. Nevertheless, Father refused.

While Father had some contact with the Children's Division at various times, he failed to keep in consistent contact as required. Father failed to notify the Children's Division when he was released on

---

5. All references to statutes are to RSMo as amended through 2016, unless otherwise indicated.

6. At the time of the hearing, Father had filed a motion requesting post-conviction relief in the criminal case.

7. Father was appointed counsel in October 2014, and was represented by counsel when at least four of the WSAs were implemented.

8. "FST" is the abbreviation for family support team.

bond in September 2014. The Children's Division was unable to locate Father, or obtain his address and phone number, until he appeared at an October 2014 hearing.

Father also failed to maintain safe and adequate housing. At no time after the WSAs were entered into did Father obtain such housing.

Father had mixed results in fulfilling his obligation to obtain and maintain employment. While Father did work for a farmer until December 2014, he was then laid off. He did not obtain work again until April 2015. He then worked until he was delivered to the DOC in July 2015.

Since April 2014, Father contributed nothing financially for the care and maintenance of the Children. Father was released on bond in September 2014, and sometime thereafter, began working until July 2015. In addition to wages, Father also received a Christmas bonus, but did not contribute financially to the Children, nor bought any birthday or Christmas gifts. While in the DOC, Father initially received a stipend of $7.50, which was later increased to $8.50. Father saved that money to buy himself a fan, and then was saving up to buy himself a television. The only thing the Children received from Father were some letters and drawings, but only when Father was in jail.

As to Father's obligation to attend all FST meetings and court hearings, Father's compliance was deficient. While Father was incarcerated and awaiting trial, he was brought to court to attend the juvenile hearings. He was not able to participate in the FST meetings while in jail, but following the meetings, the Children's Division would contact Father to discuss the meetings. When Father was out of jail on bond, awaiting trial and sentencing, Father was not consistent in attending these meetings. Since Father was transported to the DOC, Father has not participated in FST meetings or court hearings. The Children's Division continued to communicate with Father following the FST meetings.

Father has not participated in any parenting classes. He failed to even initiate contact with any agency about parenting classes until "sometime after he was transferred to DOC." Father, at all times, has openly refused to participate in a sex offender program as requested by the Children's Division.

On July 18, 2016, a juvenile officer filed, on behalf of the Children, petitions for termination of parental rights, pursuant to section 211.447. The pleadings asserted, in relevant part, that:

5. The [Children are] now and [have] at all times since on or about April 14, 2014, been under the jurisdiction of this [c]ourt ..., when said [children were] taken into protective custody and placed in the temporary legal and physical custody of the ... Children's Division due to allegations of ... drug use in the home by [Mother].

. . . .

7. The [Children have] remained in protective custody/alternative care at all times since ... adjudication[,] [which occurred on or about April 16, 2014].

8. Pursuant to Section 211. 447.5(4) RSMo., the parental rights of [Father], in and to said [children] should be terminated for the reason that [o]n or about May 7, 2015, [Father] was found guilty of the C Felony of Sexual Abuse in the First Degree in violation of Section 566.100 RSMo. where the victim was a child and a member of the family who resided with [Father] and was related to him within the third degree of consanguinity or affinity.

The pleadings also asserted in part, pursuant to section 211.447.5(3), that: (1) the

Children had been under the jurisdiction of the Juvenile Division for a period of one year, and that conditions that led to the assumption of jurisdiction still persist—and/or conditions of a potentially harmful nature continue to exist—so there was little likelihood that those conditions would be remedied so that the Children could be returned to Father in the near future; (2) Father failed to achieve any significant or consistent success with the goals outlined in the WSAs due to his failure to work with the Children's Division case managers, and his failure to follow through with the recommended and offered services; (3) there was no evidence that Father had a mental condition; and (4) there was no evidence that Father had a chemical dependency.

Finally, pursuant to section 211.447.7, the pleadings asserted that the Children had little emotional ties to Father; Father had not visited with the Children since they were taken into protective custody due to Father's felony sexual abuse conviction; that it was unlikely additional services would bring about a lasting parental adjustment enabling the Children to return to Father within an ascertainable period of time; Father consistently showed a disinterest and lack of commitment to the Children by his actions; and Father had been convicted of a felony offense of such a nature that the Children would be deprived of a stable home for a period of years.

A hearing was held on September 30, 2016. The trial court took judicial notice of the Children's underlying juvenile files. Counsel for the Juvenile Office notified the trial court of an error in the pleadings for termination of parental rights: in paragraph 8 of the pleadings the assertion was made that Father had been convicted of abusing a child under the age of 18 living in Father's home or related to Father;

counsel for the Juvenile Office indicated it had been discovered that the child victim was not related to Father and did not reside in Father's home. The attorney for the Juvenile Office then moved to dismiss paragraph 8 from the pleadings; without objection, the trial court dismissed paragraph 8.

On November 21, 2016, the trial court entered two judgments, one for each child, terminating Father's parental rights. The judgments included substantially similar findings for each child. This appeal followed.

In nine points, Father asserts the trial court erred: (1) in relying on Father's conviction in terminating his parental rights pursuant to section 211.447.5(3) because the conviction did not involve a child related to Father or living with Father; (2) because the judgments are defective in relying on section 211.083, in that such section does not authorize termination of parental rights; (3) terminating Father's parental rights based solely on his incarceration because Father has not abandoned the Children; (4) terminating Father's parental rights based on section 211.038 because it is not a statutory factor to be considered in termination of Father's parental rights; (5) because the judgments are against the weight of the evidence as they rely on section 211.038 and said reliance is premature as Father had not fully exercised his post-conviction relief of his criminal conviction; (6) because the judgments are against the weight of the evidence in finding Father did not make progress on the terms of the WSAs which would allow termination under section 211.477.5(3) as Father did comply with some of the terms; (7) in terminating Father's rights pursuant to section 211.477.5(3)(b) because there was evidence of success of the Children's Division to aid Father and the Children's Division ceased

efforts prematurely; (8) because termination of Father's parental rights was not in the best interest of the Children because the trial court's findings pursuant to section 211.447.7 is against the weight of the evidence; and (9) because Father received ineffective assistance of counsel.

## Principles of Review

■■■ In reviewing termination of parental rights cases, like all types of bench-tried cases, this Court is mindful "that circuit courts are better positioned to determine witness credibility and weigh evidence in the context of the whole record than an appellate court." *J.A.R. v. D.G.R.*, 426 S.W.3d 624, 626 (Mo. banc 2014). As previously explained by this Court:

> This Court reviews whether clear, cogent, and convincing evidence was presented to support a statutory ground for terminating parental rights under *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Therefore, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. The judgment will be reversed only if we are left with a firm belief that the order is wrong.
>
> Conflicting evidence will be reviewed in the light most favorable to the trial court's judgment. Appellate courts will defer to the trial court's credibility assessments. When the evidence poses two reasonable but different inferences, this Court is obligated to defer to the trial court's assessment of the evidence.
>
> . . . .

After this Court determines that one or more statutory ground has been proven by clear, convincing, and cogent evidence, this Court must ask whether termination of parental rights was in the best interest of the child. At the trial level, the standard of proof for this best interest inquiry is a preponderance of the evidence; on appeal, the standard of review is abuse of discretion.

*Id.* (quoting *In re Adoption of C.M.B.R.*, 332 S.W.3d 793, 815–16 (Mo. banc 2011)). This Court has "laid to rest any argument that the 'clear, cogent, and convincing' burden of proof requires this Court to consider any contrary evidence when reviewing whether the judgment is supported by substantial evidence." *Id.* at 626 n.4.

"In reviewing questions of fact, the reviewing court is to recognize that the circuit court is free to disbelieve any, all, or none of the evidence, and it is not the reviewing appellate court's role to re-evaluate the evidence through its own perspective." *Id.* at 627. "The trial court receives deference on factual issues because it is in a better position not only to judge the credibility of the witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record." *Id.* . . .

***In the Interest of J.P.B.***, 509 S.W.3d 84, 89–90 (Mo. banc 2017).

## Analysis

### Point I

■■■ In his first point, Father argues that the trial court erred in terminating his parental rights, pursuant to section 211.447.5(3),[9] in that although Father had

**9.** Section 211.447.5(3) provides for termination where:

The child has been under the jurisdiction of the juvenile court for a period of one year,

been convicted of sexual abuse in the first degree, with a victim under the age of 18, the child victim was not related to Father and did not reside with Father.

The termination pleadings of July 18, 2016, included two statutory bases for terminating Father's parental rights: (1) section 211.447.5(4),[10] in that Father "was found guilty of the C Felony of Sexual Abuse in the First Degree in violation of Section 566.100 RSMo. where the victim was a child and a member of the family who resided with [Father] and was related to him[.]"; (2) section 211.447.5(3), in that Father failed to rectify the conditions which led to the assumption of jurisdiction by the Juvenile Division.

At trial, the Juvenile Office noted that its pleadings were incorrect, insofar as Father's sexual abuse victim was not, as alleged in the pleadings, a member of Father's household or related to Father. As a result, the Juvenile Office dismissed the section 211.447.5(4) ground, and the trial court sustained the dismissal.

In his brief, Father suggests that

[t]he trial court cites the fact that [Father] had been convicted of a Class C felony of sexual abuse in the first degree in violation of Section 566.100 R.S.Mo when making a determination that [Father]'s parental rights should be terminated. However, the Juvenile Office proceeded for termination pursuant

and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home.

10. Section 211.447.5(4) allows for termination of parental rights where:

to [section] 211.447.5(3) not [section] 211.447.5(4).

Father fails to demonstrate how the trial court's consideration of his conviction was improper in the context of termination pursuant to section 211.447.5(3). As the trial court noted, the conviction

has deprived the [Children] of a stable home with [Father] for the past four years. Pursuant to Section 211.038 R.S.Mo., the Juvenile Court is prohibited from placing the [Children] in the home of [Father].... [The] conviction on that felony offense will deprive the [Children] of a stable home with [Father] at a minimum for the next twenty-two months and possibly the next four years.

Father does not show how these facts were errantly considered, pursuant to the trial court's section 211.447.5(3) termination of Father's parental rights.

The trial court did not err as a matter of law in terminating Father's parental rights pursuant to section 211.447.5(3). Point I is denied.

### Point II

In Father's second point, he argues that the trial court erred as a matter of law because paragraph 63 of the trial court's judgments references section

The parent has been found guilty or pled guilty to a felony violation of chapter 566 when the child or any child in the family was a victim, or a violation of section 568.020 when the child or any child in the family was a victim. As used in this subdivision, a "**child**" means any person who was under eighteen years of age at the time of the crime and who resided with such parent or was related within the third degree of consanguinity or affinity to such parent[.] (Emphasis in original).

211.083, and such section does not authorize termination of Father's parental rights.

 This Court will "affirm the judgment of the trial court on any ground supported by the record." *Welcome v. Welcome*, 497 S.W.3d 842, 845 (Mo.App. W.D. 2016) (internal quotation and citation omitted). This reflects the general principle underlying appellate review: reversal is based on a showing of *prejudicial* error, and not mere error alone.[11]

In several instances, the trial court cites section 211.083 as statutory support for the principle that after Father's conviction of the class C felony of sexual abuse in the first degree, with a minor victim, the trial court was prevented from reuniting Father with the Children. As Father points out in his brief, section 211.083 relates to the trial court's ability to manage juvenile defendants as to, in main part, restitution and community service. Nevertheless, section 211.038, which the trial court's judgments references in other places, states:

> A child under the jurisdiction of the juvenile court shall not be reunited with a parent or placed in a home in which the parent or any person residing in the home has been found guilty of any of the following offenses when a child was the victim:
> (1) A felony violation of section ... 566.100[.]

Section 211.038.1.

To that end, while the trial court errantly made some references to section 211.083 whereas the substance of what the trial court was referencing was actually in section 211.038, Father was not prejudiced. Notwithstanding the typographical error, the trial court was correct as to the substance of the statutory prohibition on reuniting Father with the Children. Because the outcome of the judgments are supported by the record, reversal is not warranted. *Welcome*, 497 S.W.3d at 845. The trial court did not prejudicially err as a matter of law by referencing section 211.083 instead of 211.038. Point II is denied.

## Point III

 In his third point, Father argues that "[t]he **trial court erred as a matter of law in that the trial court cannot terminate [Father]'s parental rights based solely on incarceration because [Father] has not abandoned the [C]hildren.**"

Rule 84.04(d)(1) sets forth the mandatory form in which points relied on are to be presented:

> (1) Where the appellate court reviews the decision of a trial court, each point shall:
> (A) Identify the trial court ruling or action that the appellant challenges;
> (B) State concisely the legal reasons for the appellant's claim of reversible error; and
> (C) Explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

 Rule 84.04(d)(1) also provides a roadmap for constructing a compliant point relied on:

> The point shall be in substantially the following form: "The trial court erred in [*identify the challenged ruling or action*], because [*state the legal reasons*

---

11. We note that there are certain unique instances in which reversal or remand may be required in the absence of a showing of prejudice, for instance in cases where prejudice is presumed; however, as no such exceptions are presently before us, we need not expound on them here.

*for the claim of reversible error*], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error*]."

Rule 84.04(d)(1). Rule 84.04(d)(4) further explains that "[a]bstract statements of the law, standing alone, do not comply with this rule."

The requirement that the point relied on clearly state the contention on appeal is not simply a judicial word game or a matter of hypertechnicality on the part of appellate courts. Instead, the purpose of this rule is to give notice to the opposing party as to the precise matters that must be contended with and to inform the court of the issues presented for review.

*In re Marriage of Weinshenker*, 177 S.W.3d 859, 863 (Mo.App. E.D. 2005) (internal quotations and citations omitted). "[M]erely stating what errors are, without also stating why they are errors, neither complies with the rule nor preserves anything for review." *Jones v. Buck*, 400 S.W.3d 911, 915 (Mo.App. S.D. 2013) (internal quotations and citations omitted).

Father's Point III fails to follow the mandatory form set forth by Rule 84.04(d), and is therefore not preserved for our review.[12] Point III is denied.

### Point IV

■ Father's fourth point argues that the trial court erred as a matter of law **in terminating [Father]'s parental rights based on Section 211.038 R.S.Mo because said Section is not a statutory factor to be considered in terminating [Father]'s parental rights. Furthermore, [Father]'s due process rights were violated by failure to cite Section 211.038 in the Petition for Termination of Parental Rights as grounds for termination.**

■ As an initial matter, this point fails to follow Rule 84.04(d)'s mandatory framework, and is multifarious in that it alleges multiple claims of error in the same point. *Fastnacht v. Ge*, 488 S.W.3d 178, 184 (Mo.App. W.D. 2016). "As a general rule, multifarious points preserve nothing for appellate review and . . . are subject to dismissal." *Id.*

Even if Father's point were compliant with Rule 84.04, his claim would still fail. The first portion of Father's argument largely recycles the argument we rejected in our analysis of Father's second point, *supra*: that the trial court erred in citing section 211.083 instead of section 211.038. To the extent Father cedes that the trial court intended to cite section 211.038, Father complains that the petitions to terminate Father's parental rights do not specifically cite that statute, and, therefore, "provides no notice to [Father] or [Father]'s counsel that the court would be considering termination of [Father]'s parental rights pursuant to said statute." Father accurately recounts that the morning of the hearing, the Juvenile Office dismissed paragraph 8 of its pleadings, relating to section 211.447.5(4); the Juvenile Office recounted to the trial court that it had learned that Father's sexual abuse victim, while a minor under the age of 18, did not reside with Father and was not related to Father by blood, and thus did not provide an avenue for termination under section 211.447.5(4). The Juvenile Office proceeded with the remaining factual allegations in its pleadings, and the remaining section 211.447.5(3) ground for termination—failure to rectify.

12. We note that several of Father's points fail to comply with Rule 84.04. Nevertheless, without further comment, we exercise our discretion to review some of those non-compliant points *ex gratia.*

In his brief, Father argues that "[t]his change in the pleadings without prior notice to [Father] did not afford [Father] due process to know of the exact allegations against him or to properly prepare."

■■■ The transcript reveals no due process objection by Father at the time the Juvenile Office dismissed its section 211.447.5(4) ground; this challenge was not raised at the earliest available opportunity. As our supreme court has indicated:

> To properly raise a constitutional challenge, a party must: (1) raise the constitutional question at the first opportunity; (2) state with specificity the constitutional provision on which the challenge rests, either by explicit reference to the article and section or by quoting the provision itself; (3) set forth facts showing the violation; and (4) preserve the constitutional question throughout the proceedings for appellate review.

*Dodson v. Ferrara*, 491 S.W.3d 542, 552 (Mo. banc 2016). The record reveals that Father has met none of these required elements. Father's failure to comply with these preservation requirements, as to his due process rights, results in a waiver of his claim. *See, Matter of A.L.R.*, 511 S.W.3d 408, 413 (Mo. banc 2017). Point IV is denied.

### Point V

■■■ In his fifth point, Father argues that the trial court's judgments are

> **against the weight of the evidence in terminating [Father]'s [p]arental rights by relying on [section] 211.038 because said reliance was premature due to the fact [Father] had not exercised all of his post-conviction relief on his criminal conviction and said statute does not mandate termination of rights.**

■■■ To present an argument that a judgment is against the weight of the evidence, the appellant must complete four steps:

> (1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
> (2) identify all of the favorable evidence in the record supporting the existence of that proposition;
> (3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,
> (4) demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

*Houston v. Crider*, 317 S.W.3d 178, 187 (Mo.App. S.D. 2010). Father's argument wholly fails to follow this mandatory analytical sequence. As a result, his argument is "analytically useless and provides no support" for his challenge. *Id.* at 188. Point V is denied.

### Point VI

In Father's sixth point, he argues that the judgments are against the weight of the evidence in that the trial court found that Father failed to make progress on the WSAs because Father had made efforts to send letters to his children, obtain furniture, and attend hearings and meetings when not incarcerated.

■■■ Father's argument relies on evidence and inferences favorable to his position, and unfavorable to the judgments, which our standard of review requires us to disregard. *In the Interest of J.P.B.*, 509 S.W.3d at 89–90. Further, Father's argu-

ment fails to conform to *Houston*'s mandatory analytical sequence for an against-the-weight-of-the-evidence challenge, rendering it analytically useless. 317 S.W.3d at 187-88. Point VI is denied.

### Point VII

■ Father's seventh point argues that the trial court erred in terminating his parental rights pursuant to section 211.447.5(3)(b) because there was evidence of successful aid to Father by the Children's Division, and the Children's Division efforts ceased prematurely.

■ This point attempts to challenge the factual basis of the judgments. Our standard of review prescribes only two avenues for challenging the factual basis of a judgment in a bench-tried case: a challenge that the judgment is not supported by substantial evidence, and a challenge that the decision is against the weight of the evidence. *Houston*, 317 S.W.3d at 186-87. We discuss the mandatory analytical sequence for an against-the-weight-of-the-evidence challenge in our discussion of Father's point five, *supra*. To present a challenge to the sufficiency of the evidence, an appellant must complete three steps:

(1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;

(2) identify all of the favorable evidence in the record supporting the existence of that proposition; and,

(3) demonstrate why that favorable evidence, when considered along with the reasonable inferences drawn from that evidence, does not have probative force upon the proposition such that the trier of fact could not reasonably decide the existence of the proposition.

*Id.* at 187.

Father's argument conforms to neither of these mandatory analytical sequences.

As a result, his argument is analytically useless. *Id.* at 187-88.

Furthermore, Father's argument largely relies on evidence and inferences favorable to his position, and unfavorable to the judgments—we must disregard such evidence and inferences under our standard of review. *See, In the Interest of J.P.B.*, 509 S.W.3d at 89-90.

Even in the absence of these analytical defects, Father's point would still fail. The trial court accurately noted in its judgments that:

- Father agreed, as part of his WSAs, to: write letters to the Children at least weekly and later monthly; maintain contact with the Children's Division; maintain safe and adequate housing; obtain employment; attend all FST meetings and court hearings; contact and attend parenting class; and obtain information about parenting and fatherhood programs while in prison;

- Father would be eligible for a parole hearing on August 1, 2018, if he completed a sex offender program; the Children's Division requested Father complete the sex offender program, but Father refused to complete such a program;

- Father failed to write letters to the Children while he was out of jail awaiting trial and sentencing;

- Father failed to maintain housing that would meet the Children Division's minimum standards any time after the Children were taken into protective custody;

- Father failed to participate in any parenting classes, and failed to initiate contact with any agency about parenting classes until sometime after he was transferred to the DOC;

- Father contributed nothing to the support of the Children since his incarceration, despite the financial ability to do so.

Father's argument wholly fails to account for these facts, and his claims are therefore unavailing. The trial court did not err in terminating Father's parental rights on the basis that there was evidence of successful aid to Father by the Children's Division, and the Children's Division efforts ceased prematurely. Point VII is denied.

### Point VIII

■ In Father's eighth point, he argues that "[t]he termination of the parental rights is not in the best interests of the [C]hildren because the finding of the trial court of the statutory factors of section 211.447.7 is against the weight of the evidence." This point wholly fails to conform to the mandatory formulation in which points relied on are to be presented. Rule 84.04(d)(1). *See*, *Weinshenker*, 177 S.W.3d at 863. Furthermore, Father's argument fails to follow *Houston*'s mandatory analytical sequence for the presentation of an against-the-weight-of-the-evidence argument, rendering Father's argument analytically useless. 317 S.W.3d at 186-87. Point VIII is denied.

### Point IX

■ Father's ninth point argues that the judgments should be reversed as a matter of law in that Father received ineffective assistance of counsel. Specifically, Father argues his counsel was ineffective because counsel failed to prepare Father for the hearing, failed to subpoena witnesses as requested by Father, and

failed to object to an amendment of the pleadings at pre-trial arguments.[13]

Pursuant to § 211.462.2, a natural parent has a statutory right to counsel in a termination of parental rights proceeding and, therefore, an implied right to effective assistance of counsel. The test is whether the attorney was effective in providing his client with a meaningful hearing based on the record. Failure in this regard contemplates conduct by counsel so defective as to amount to a violation of parent's constitutional right to access the courts. As we have indicated in the post-conviction relief context, while trial counsel has a duty to preserve error by asserting it in an appropriate post-trial motion, the failure to preserve error for appellate review does not affect a movant's right to a fair *trial*. This rationale is instructive here. Failure to preserve error for appellate review does not affect [the] right [of a parent in a termination action] to a fair trial.

*In the Interest of C.Z.N.*, 520 S.W.3d 828, 835 (Mo.App. S.D. 2017) (internal quotations and citations omitted) (emphasis in original).

As an initial matter, we note that "[a]ll factual assertions in the argument shall have specific page references to the relevant portion of the record on appeal, i.e., legal file, transcript, or exhibits." Rule 84.04(e). In support of Father's assertions that counsel failed to prepare Father for the hearing, and failed to subpoena witnesses as requested by Father, Father's argument cites a document in the record styled "Petition for Appointment of Attorney," filed in the Circuit Court of Mississippi County on December 28, 2016. In this

---

13. We note that Father's argument section attempts to expand the scope of the matters complained of; however, the point relied on limits the scope of the matters we may exam-

ine in Father's argument. *See*, *The Lamar Company, LLC v. City of Columbia*, 512 S.W.3d 774, 791 n.18 (Mo.App. W.D. 2016).

*pro se* notarized document, Father requested that an attorney be appointed for him on the basis of his lack of income. In the same document, Father made several factual and legal arguments relating to his view of the propriety of the trial court's judgments terminating his parental rights.

Neither party directly confronts the issue of what value we may derive from Father's notarized allegations, where, as here, such allegations have not been "screened" for credibility by a fact-finder below. Nevertheless, because Father's argument would be unavailing even if this question were resolved in his favor, we need not settle this un-briefed issue for purposes of this opinion.

█ Father fails to show that he was deprived of a meaningful hearing based on the record. *C.Z.N.*, 520 S.W.3d at 835. Father's attorney made pre-trial arguments on Father's behalf, made efforts to cross-examine witnesses and elicit testimony favorable to Father's case, and presented evidence on Father's behalf, including Father's own testimony. While Father may have wanted other witnesses at the trial, or felt that his attorney could have better prepared him for the experience of trial, such complaints do not, under the facts of this case, amount to deprivation of a meaningful hearing. Further, Father's suggestion that counsel was ineffective for failing to object to the Juvenile Office's amendment of pleadings on the morning of trial, is wholly without merit: the Juvenile Office merely *dismissed* paragraph 8 of its pleadings, relating to 211.447.5(4). The Juvenile Office did not, at the beginning of trial, *add* anything to its pleadings. An objection to the Juvenile Office's dismissal of paragraph 8 would have been non-meritorious. "Counsel will not be deemed ineffective for failing to make non-meritorious objections." *Christian v. State*, 502 S.W.3d 702, 706 (Mo.App. S.D. 2016) (internal quota-

tion and citation omitted). Father fails to show that he was deprived of a meaningful hearing. *C.Z.N.*, 520 S.W.3d at 835. Point IX denied.

The judgments of the trial court are affirmed.

NANCY STEFFEN RAHMEYER, C.J., P.J.—CONCURS

JEFFREY W. BATES, J.—CONCURS