WILLIAM W. FRANCIS, JR., J.-OPINION AUTHOR
R.A.L. ("Father") appeals the judgment terminating his parental rights to his son, J.A.L. ("Child").[1] Father raises four points on appeal. Finding no merit to these points, we affirm the judgment of the Juvenile Division of the Circuit Court of Phelps County (the "trial court").
Factual and Procedural Background
Our recitation of the relevant facts is in accord with the principle that we view the evidence in the light most favorable to the judgment. See J.A.R. v. D.G.R. , 426 S.W.3d 624, 626 (Mo. banc 2014). Viewed in this context, the following facts are pertinent to the current appeal.
Child was born in September 2007, at which time Father was incarcerated in the Dent County Jail. Father had been convicted of second-degree statutory rape (section 566.034) and second-degree statutory sodomy (section 566.064).[2] On December *807 10, 2007, Father was sentenced to "five years ... on each Count" in the Department of Corrections ("DOC").
On December 12, 2013, Father pled guilty to the offense of failure to register as a sex offender, pursuant to sections 589.400-425, in violation of section 589.425, RSMo Cum.Supp. (2009). On February 6, 2014, Father was sentenced to four years in the DOC for this violation.
On January 14, 2015, Child was removed from the care of Mother and placed in protective custody under the jurisdiction of the Children's Division of the Missouri Department of Social Services ("Children's Division"). Child was placed with a family member ("S.M."); Father was incarcerated in the DOC at that time, and for that reason, Child could not be placed with Father.
On February 4, 2015, Father was notified by Child's caseworker, Leslie Higgins ("Higgins"), that Child was taken into custody by the Children's Division.
On March 23, 2015, Higgins received a letter from Father requesting information about the case and requesting permission to write Child. Between April 2015 and August 10, 2015, Father spoke with Higgins on the telephone three times-on those three occasions, he expressed interest in being involved in the case, writing to Child, and in receiving updates about Child. During the call on August 10, 2015, Father reported he was scheduled to be released on October 5, 2015, and that he would live in a halfway house thereafter in St. Louis. Father stated that he would write a letter to Child, through the case manager, as soon as he got stamps. Father thereafter failed to send any letters to Child through the case manager.
Between August 10, 2015 and September 15, 2016, Father made no contact with, or inquiries to Higgins as to Child.
Father was released from prison on October 5, 2015, but made no effort to contact Higgins regarding Child, and attended no FST meetings or court hearings. Instead, Father went "on the run" until March 2016. By "on the run," Father meant that "when [he] got out, [he] went on the run instead of doing what [he] was supposed to do." Specifically, Father said he was using marijuana and methamphetamine while "on the run."
At a permanency review hearing on March 16, 2016, the primary permanency goal for Child was changed to termination of parental rights and adoption.
Father returned to prison sometime in March 2016, and was released for a short time thereafter. He was recommitted to prison in June 2016, for a failure to register as a sex offender. On December 20, 2016, Father was released to the St. Louis Community Release Center. However, Father failed to report to the center upon his release from the DOC-a violation of Father's parole-and Father was again incarcerated in the DOC.
On May 19, 2016, a petition seeking termination of the parental rights of both Father and Mother was filed.
*808 Father was released on parole on February 22, 2017, to the home of his aunt and uncle in Salem, Missouri. Between September 16, 2016 and February 22, 2017, Higgins had no communication from Father regarding Child.
On March 15, 2017, Father signed a written service agreement. On March 31, 2017, the Children's Division filed a motion to be relieved of the obligation of making reasonable efforts to reunify Child with Father due to Father's prior felony convictions for second-degree statutory rape and second-degree statutory sodomy, pursuant to sections 210.117, 211.038, and 452.375.3.[3]
The trial court entered an order on April 25, 2017, relieving the Children's Division of its obligation to make reasonable efforts to reunify Child with Father.
On July 3, 2017, Father filed a motion for visitation with Child. Child's therapist, G. Brock Hussey ("Hussey"), a licensed professional counselor, issued a report recommending that no visitation occur between Child and Father. Hussey stated that Child had developed a primary relationship with S.M., which was necessary for healthy development. Hussey indicated that Child demonstrated a secure attachment to S.M., and had the tools and support necessary to thrive into adulthood. Hussey could see no benefit from forcing Child to engage in visitation with a man he did not know or want to know, further complicating Child's emotional attachments *809 and wellbeing. Following a hearing on July 19, 2017, the trial court denied Father's motion for visitation.
On July 26, 2017, an "Investigation and Social Summary Addendum," prepared by Higgins, was filed with the trial court. The report indicated that Child had consistently stated he did not want to meet Father or have any form of contact with him. Child wanted to be adopted by S.M. The report also indicated that Father had admitted to abusing methamphetamines and marijuana as of a year ago, had multiple incarcerations throughout, and had no visits with Child due to those incarcerations. Although the trial court ordered Father to pay $50 each month for Child's support, Father remitted only a single $50 payment in 2013. Higgins recommended that Father's parental rights be terminated.
On August 3, 2017, the juvenile officer filed a Second Amended Petition for Termination of Parental Rights seeking termination of Father's parental rights on the grounds of abuse or neglect, pursuant to section 211.447.5(2); failure to rectify pursuant to section 211.447.5(3); and parental unfitness, pursuant to section 211.447.5(6).
A hearing was held on August 11, 2017.[4] At the time of the termination hearing, Child remained in an adoptive placement with S.M., with whom he had been living since January 14, 2015.
Higgins testified that her recommendation was for the termination of Father's parental rights to Child as it was in Child's best interest, Father failed to provide anything for Child's basic needs, and failed to provide for education or emotional or mental care for Child. Father paid no support for Child other than $50 in 2013, despite the fact that Father had a job in prison for which he received $7.50 per month. When out of prison, Father remitted no support payments for Child.
Higgins stated that on March 15, 2017, Father attended a court hearing, whereupon he signed a written service agreement and agreed to submit to random drug testing, maintain stable and safe housing, maintain full-time employment and show proof of income, and attend individual counseling. Father also agreed to attend all court hearings and team meetings, as well as cooperate with authority figures and service providers, cooperate with monthly visits from the assigned caseworker, and maintain consistent communication with the assigned caseworker, reporting any changes in status, telephone number or address.
Pursuant to the written service agreement, Father submitted to a drug test, which was negative. Higgins did one walk through of the home where Father was living and observed some safety issues that would need to be resolved. Father attended all team meetings and court dates since his release from prison. Father did maintain communication with Higgins. Higgins was in the process of scheduling counseling for Father when the Children's Division was relieved of reasonable efforts on April 25, 2017.
Higgins stated that a continuation of a parent-child relationship would deprive Child of an opportunity for a stable and permanent home. Higgins reported that Child was currently in a stable and permanent home with S.M., in large part due to the fact that Child has lived with S.M. since he came into care; and that it was in the best interest of Child for Father's parental rights to be terminated.
*810 Father testified he only saw Child once since Child's birth-at that time, Father had been in jail, and Child was less than a year old. Father admitted he had been in and out of prison a number of times. His first release from prison was in October 2015, he was committed back to prison in March 2016, was released at some point, and was again committed in the latter part of 2016. Father was released on probation in February 2017.
After being released in 2017, Father began having chest pains, while doing side jobs for his uncle. He was hospitalized and was told "90 percent of [his] heart was clogged." Father stated he had "to go do a stress test, and they think I've got to go have another ... stent [ ] put in, because they think it's clogged again." Father had not been released to work, and stated he currently could not provide proper care and support for Child. Father stated that he was to go "back in February to the heart doctor[,] ... [and] if they release me, I don't have to go back in for another stent. Then I can get back ... to work and provide for [Child]." Father depends on family and friends to help with his own current reasonable needs.
At the time of trial, Father was on parole for failure to register as a sex offender, with parole set to terminate on February 6, 2018.
On September 1, 2017, the trial court entered a judgment terminating Father's parental rights with respect to Child. The trial court found, in relevant part, that:
1. Pursuant to section 211.447.2(1), Child had been in foster care for at least 30 months.
2. Pursuant to section 211.447.5(2)(d), Father, although physically and financially able, repeatedly and continuously failed to provide Child with adequate food, clothing, shelter, education, and other care and control necessary for Child's physical, mental and emotional health and development. Father's inability to provide for Child was partially due to his health condition, but the court found that Father's voluntary acts causing his incarceration was a larger factor in his inability to provide for Child's physical, mental and emotional health and development. From the evidence, the court believed Father voluntarily chose to have no presence in Child's life until this proceeding was instituted. Father had only one brief contact with Child when Child was less than one year old. Further, there was no attempt by Father to provide for Child's needs as set out in section 211.447.5(2) during those periods of time when Father was not incarcerated.
3. Pursuant to section 211.447.5(3), Child had been under the jurisdiction of the court for more than one year, and conditions which led the court to assume jurisdiction over Child still persisted, or conditions of a potentially harmful nature continued to exist, and there was little likelihood that those conditions would be remedied at an early date so that Child could be returned to Father in the near future. Further, the continuation of the parent-child relationship greatly diminished Child's prospects for early integration into a stable and permanent home.
4. Pursuant to section 211.447.5(3)(a), Father made little progress in complying with the terms of the written service agreement entered into by Father and the Children's Division in that Father, through his own actions, cannot be considered a reunification resource pursuant to sections 210.117 and 211.038.
*811 5. Pursuant to section 211.447.5(3)(b), the efforts of the Juvenile Officer and Children's Division to aid Father on a continuing basis in adjusting Father's circumstances or conduct to provide a proper home for Child failed due to Father's voluntary actions in subjecting himself to the provisions of sections 210.117 and 211.038.
6. Pursuant to section 211.447.5(3)(c), no evidence was presented that Father had a mental condition which rendered him unable to knowingly provide Child the necessary care, custody and control.
7. Pursuant to Section 21l.447.5(3)(b), no evidence was presented that Father had a chemical dependency which prevented him from consistently providing the necessary care, custody and control over Child.
8. Pursuant to section 211.447.5(6), Father was unfit to be a party to the parent-child relationship because of a consistent pattern of committing a specific abuse, as defined in section 455.010, upon Child or had subjected Child to specific conditions which directly related to the parent-child relationship, which rendered Father unable for the reasonably foreseeable future to care appropriately for the ongoing physical, mental or emotional needs of Child. Father's voluntary acts resulting in his criminal conviction under section 566.064 prevented him from being considered a reunification resource for Child. Further, based on the testimony of Brock Hussey, Father's failure to maintain any type of relationship with Child rendered him unable to appropriately care for the ongoing physical, mental and emotional needs of Child.
9. Pursuant to section 211.447.7, in considering whether to terminate the parent-child relationship between Father and Child, the court found:
a. Child had no emotional ties to Father.
b. Father had not maintained regular visitation or other contact with Child.
c. Father had not provided for the cost of care and maintenance of Child when financially able to do so including the time that Child had been in the custody of the Children's Division or other child-placing agency.
d. Further services by the Children's Division would not likely bring about lasting parental adjustment enabling a return of Child to Father within an ascertainable period of time due to Father not being able to be a reunification resource.
e. Father had demonstrated a disinterest in or lack of commitment to Child by failing to maintain any sort of contact, or any type of support, with Child during most, if not all, of Child's life, even during periods when Father was not incarcerated.
f. The continuation of the parent-child relationship would deprive Child of the opportunity for a stable and permanent home.
The trial court ordered the parental rights of Father to be terminated as to Child. This appeal followed.
In four points on appeal, Father asserts:
I. THE TRIAL COURT ERRED IN TERMINATING FATHER'S PARENTAL RIGHTS FOR FAILURE TO RECTIFY DUE TO FATHER MAKING LITTLE PROGRESS IN COMPLYING WITH THE TERMS OF THE SOCIAL SERVICE PLAN ENTERED INTO BY FATHER AND THE CHILDREN'S DIVISION
*812 BECAUSE THERE IS NO SUBSTANTIAL EVIDENCE TO SUPPORT IT IN THAT THE CONDITIONS WHICH LED THE COURT TO ASSUME JURISDICTION DO NOT CONTINUE TO EXIST AND THE CASE MANAGER AND FATHER BOTH TESTIFIED FATHER WAS COMPLIANT WITH THE TERMS OF HIS WRITTEN SERVICE AGREEMENT.
II. THE TRIAL COURT ERRED IN TERMINATING FATHER'S PARENTAL RIGHTS ON GROUNDS OF NEGLECT BECAUSE IT ERRONEOUSLY APPLIED THE LAW IN THAT THE TRIAL COURT DID NOT MAKE FINDINGS ON ALL FOUR OF THE FACTORS AS REQUIRED BY MO. REV. STAT. § 211.447.5(2)(a)-(d).
III. THE TRIAL COURT ERRED IN TERMINATING FATHER'S PARENTAL RIGHTS DUE TO NEGLECT BECAUSE THE JUDGMENT IS AGAINST THE WEIGHT OF THE EVIDENCE IN THAT FATHER WAS NOT ABLE TO PROVIDE FINANCIAL SUPPORT WHILE INCARCERATED, OR AFTER INCARCERATION DUE TO HIS HEALTH CONDITION, AND HE REPEATEDLY REQUESTED CONTACT WITH [CHILD] AND WAS DENIED.
IV. THE TRIAL COURT ERRED IN TERMINATING FATHER'S PARENTAL RIGHTS DUE TO PARENTAL UNFITNESS BECAUSE THE JUDGMENT ERRONEOUSLY APPLIES THE LAW IN THAT BASED ON FATHER NOT BEING CONSIDERED A REUNIFICATION SOURCE PURSUANT TO MO. REV. STAT. § 210.117 AND § 211.038 BECAUSE MO.REV.STAT. § 211.447 CONTAINS THE EXCLUSIVE GROUNDS FOR TERMINATION.[5 ]
Principles of Review
We view the evidence in the light most favorable to the judgment. See J.A.R. , 426 S.W.3d at 626. "Appellate courts will defer to the trial court's credibility assessments. When the evidence poses two reasonable but different inferences, this Court is obligated to defer to the trial court's assessment of the evidence." Id. (internal quotation and citation omitted).
" 'All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached.' " Id. (quoting Rule 73.01(c) ). "[W]e are not free to credit evidence or inferences that favor the terminated parent. To the contrary, we must ignore these." In re Adoption of C.M. , 414 S.W.3d 622, 629 (Mo.App. S.D. 2013) (internal quotation and citation omitted). "In reviewing questions of fact, the reviewing court is to recognize that the circuit court is free to disbelieve any, all, or none of the evidence, and it is not the reviewing appellate court's role to re-evaluate the evidence through its own perspective." J.A.R. , 426 S.W.3d at 627. "The trial court receives deference on factual issues because it is in a better position not only to judge the credibility of the witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record." Id. (internal quotation and citation *813 omitted). See also , In the Interest of J.P.B. , 509 S.W.3d 84, 90 (Mo. banc 2017).
Analysis
Father's Points I & III
Father's Points I & III argue-respectively-that the trial court's failure-to-rectify finding was not supported by substantial evidence, and that its neglect finding was against the weight of the evidence.
As this Court previously indicated:
The standard of review in civil cases contemplates two types of arguments regarding the factual support for a trial court's judgment: a challenge that the judgment is not supported by substantial evidence, and a challenge that the judgment is against the weight of the evidence. To present a not-supported-by-substantial-evidence challenge, the appellant must complete three distinct analytical steps:
(1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
(2) identify all of the favorable evidence in the record supporting the existence of that proposition; and,
(3) demonstrate why that favorable evidence, when considered along with the reasonable inferences drawn from that evidence, does not have probative force upon the proposition such that the trier of fact could not reasonably decide the existence of that proposition.
To present an argument that the judgment is against the weight of the evidence, the appellant must complete four distinct analytical steps:
(1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
(2) identify all of the favorable evidence in the record supporting the existence of that proposition;
(3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,
(4) Demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.
In the Interest of C.Z.N. , 520 S.W.3d 828, 834 (Mo.App. S.D. 2017) (citing Houston v. Crider , 317 S.W.3d 178, 186-87 (Mo.App. S.D. 2010) ).
Whether reviewing a substantial-evidence challenge or an against-the-weight-of-the-evidence challenge, we do not consider (and it is incumbent upon appellant not to rely on) evidence that was not credited by the trial court. Houston , 317 S.W.3d at 186-87 ; White v. Director of Revenue , 321 S.W.3d 298, 307-08 (Mo. banc 2010). Notably, in an against-the-weight-of-the-evidence challenge, this Court considers certain evidence contrary to the judgment in the third and fourth steps of the analytical sequence, pursuant to Houston -i.e. , where the appellant demonstrates: (1) the evidence was offered by a party with no burden of proof as to the ultimate issue for which that evidence was offered; (2) the efficacy of that evidence is not based on a credibility determination; and (3) the evidence is uncontested, uncontradicted, and not disputed in any manner. White , 321 S.W.3d at 307-08. Where these elements are satisfied, there is no credibility determination for the trial court to make-rather, the only task for the trial court (and this Court) is to determine *814 the legal effect of such evidence. See id. See also , Ivie v. Smith , 439 S.W.3d 189, 205-207 (Mo. banc 2014).
Father's arguments in his Points I & III wholly fail to follow Houston 's respective (and mandatory) analytical sequences. Fatally, Father fails to account for distinction between credited evidence and uncredited evidence-neither in a substantial-evidence nor an against-the-weight-of-the-evidence challenge do we consider evidence subject to the trial court's credibility determination, where such evidence was not credited (implicitly or explicitly) by the trial court. Houston , 317 S.W.3d at 187 ; see also , White , 321 S.W.3d at 307-08.
In Father's against-the-weight-of-the-evidence challenge, his argument relies on evidence contrary to the trial court's judgment. He does not attempt-or succeed-in demonstrating that such evidence was: (1) subject to the trial court's fact-finding role, and was credited by the trial court; or (2) contrary evidence embraced by White 's prerequisites. Houston 's analytical sequences are mandatory not just because this Court says so, but because they reflect the underlying criteria necessary for an appellant to succeed on appeal. Father's failure to comply with Houston 's mandates renders his argument "analytically useless and provides no support for his challenge." In Interest of N.L.W. , 534 S.W.3d 887, 899 (Mo.App. S.D. 2017) (internal quotation and citation omitted).
Further, as our Supreme Court has indicated:
Against-the-weight-of-the-evidence review is very deferential. A judgment is only reversed in rare cases, when the reviewing court has a firm belief that the decree or judgment is wrong. A challenge to the weight of the evidence presupposes that substantial evidence exists to support the judgment. However, this type of evidentiary challenge is not an opportunity for an appellant to receive a new factual determination from a different court. A judgment is against the weight of the evidence only if the circuit court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment. Even when the evidence poses two reasonable but different conclusions, appellate courts must defer to the circuit court's assessment of that evidence.
Matter of A.L.R. , 511 S.W.3d 408, 414 (Mo. banc 2017) (internal quotations and citations omitted).
Father's failures in framing his arguments to conform to our standards of review, and the implicit and necessary analytical sequences arising from those standards per Houston , dooms his challenges in Points I & III. Father fails to demonstrate that the trial court's judgment was not supported by substantial evidence (Point I), or that it was against the weight of the evidence (Point III). Points I & III are denied.
Father's Point II: Trial Court Findings on Section 211.447.5(2) Factors
In Father's Point II, he argues that the trial court "erred ... because it erroneously applied the law in that the trial court did not make findings on all four of the factors as required by Mo.Rev.Stat. § 211.447.5(2)(a)-(d)." Father suggests that the "trial court did not include findings on all subsections of (2)(a)-(d) in its judgment," and that "the case should be remanded for findings pursuant to the statute."
From our own review of the record, we discern that Respondent's brief is correct that Father failed to preserve this claim by timely presenting it to the trial court. See Rule 78.07(c); see also , *815 J.P.B. , 509 S.W.3d at 94-95. "The Missouri Constitution vests [the Supreme] Court with authority to establish rules relating to practice, procedure and pleading for all courts. When properly adopted, the rules of court are binding on courts, litigants, and counsel, and it is the court's duty to enforce them." Dorris v. State , 360 S.W.3d 260, 267 (Mo. banc 2012) (internal quotations and citations omitted). We are obliged to enforce the mandatory rules promulgated by our Supreme Court, and to reject Father's Point II due to its non-compliance with those rules. See id. Point II is denied.
Father's Point IV
As "[o]nly one statutory termination ground is needed to sustain the judgment[,]" In the Interest of Z.L.G. , 531 S.W.3d 653, 655-56 (Mo.App. S.D. 2017) (en banc), we need not address Father's Point IV. Point IV is therefore denied.
The judgment of the trial court is affirmed.
NANCY STEFFEN RAHMEYER, C.J./P.J.-Concurs
DANIEL E. SCOTT, J.-Concurs

Child's biological mother, J.M. ("Mother"), was a party to the underlying termination of parental rights petition and judgment-her parental rights to Child were terminated as a part of the underlying action. Mother is not a party to this appeal. Our discussion and disposition is limited to the parties and issues before us. We discuss Mother, and the nature of her involvement in this matter, only as necessary to address Father's instant appeal.

Section 566.034 states:
1. A person commits the offense of statutory rape in the second degree if being twenty-one years of age or older, he or she has sexual intercourse with another person who is less than seventeen years of age.
2. The offense of statutory rape in the second degree is a class D felony.
Section 566.064 states:
1. A person commits the offense of statutory sodomy in the second degree if being twenty-one years of age or older, he or she has sexual intercourse with another person who is less than seventeen years of age.
2. The offense of statutory sodomy in the second degree is a class D felony.
RSMo. 2000. Both of these sections were later amended in 2014. All other references to statutes are to RSMo as amended through 2016, unless otherwise indicated.

Section 210.117 states:
1. A child taken into the custody of the state shall not be reunited with a parent or placed in a home in which the parent or any person residing in the home has been found guilty of any of the following offenses when a child was the victim:
(1) A felony violation of section ... 566.064[.]
....
2. For all other violations of offenses in chapters 566 and 568 not specifically listed in subsection 1 of this section or for a violation of an offense committed in another state when a child is the victim that would be a violation of chapter 566 or 568, if committed in Missouri, the division may exercise its discretion regarding the placement of a child taken into the custody of the state in which a parent or any person residing in the home has been found guilty of any such offense.
Section 211.038 states:
1. A child under the jurisdiction of the juvenile court shall not be reunited with a parent or placed in a home in which the parent or any person residing in the home has been found guilty of any of the following offenses when a child was the victim:
(1) A felony violation of section ... 566.064[.]
....
2. For all other violations of offenses in chapters 566 and 568 not specifically listed in subsection 1 of this section or for a violation of an offense committed in another state when a child is the victim that would be a violation of chapter 566 or 568, if committed in Missouri, the juvenile court may exercise its discretion regarding the placement of a child under the jurisdiction of the juvenile court in a home in which a parent or any person residing in the home has been found guilty of, or pled guilty to, any such offense.
Section 452.375.3(1)(a)&(2) states:
3.(1) In any court proceedings relating to custody of a child, the court shall not award custody or unsupervised visitation of a child to a parent if such parent or any person residing with such parent has been found guilty of, or pled guilty to, any of the following offenses when a child was the victim: (a) A felony violation of section ... 566.064[.]
....
(2) For all other violations of offenses in chapters 566 and 568 not specifically listed in subdivision 1 of this subsection or for a violation of an offense committed in another state when a child is the victim that would be a violation of chapter 566 or 568, if committed in Missouri, the court may exercise its discretion in awarding custody or visitation of a child to a parent if such parent or any person residing with such parent has been found guilty of, or pled guilty to, any such offense.

The trial court took judicial notice "of the entire court file, excluding the exhibits filed on July 24 by the Juvenile Office, 24 Exhibits 1 through 5, and the exhibit-JO Exhibit 6 filed on August 2."

Father's Point IV listed in the "Points Relied On" section of his brief is identical to his Point III. However, in the argument section of Father's brief, Point IV reads as quoted supra . We presume this to be a typographical error, and treat the Point IV set forth in the argument section as the point intended.