

# Missouri Court of Appeals

## Southern District

### Division One

IN THE INTEREST OF:                )
B.D.M. and J.D.M., Minors,          )
                                    )
J.D.M., Natural Father,             )
                                    )   Nos. SD36009 and SD36010
        Appellant,   )   Consolidated
                                    )   Filed: November 14, 2019
    vs.                        )
                                    )
MISSOURI DEPARTMENT OF SOCIAL       )
SERVICES, CHILDREN'S DIVISION,      )
                                    )
    Respondent.               )

APPEAL FROM THE CIRCUIT COURT OF LAWRENCE COUNTY

Honorable Scott S. Sifferman, Judge

**<u>AFFIRMED</u>**

J.D.M. appeals the judgments of the Juvenile Division of the Circuit Court of Lawrence County (the "trial court"), terminating his parental rights to his children, B.D.M. and J.D.M. ("the Children").[1] Finding no merit to Father's two points on appeal, we affirm the judgments of the trial court.[2]

---

[1] A.M.S. ("Mother") is the Children's biological mother. Mother's rights were terminated as a part of the proceedings described herein. Mother is not a party to this appeal, and we refer to evidence about Mother only as is necessary to address Father's appeal.

[2] A petition was filed on behalf of each child and a separate judgment entered for each, though the cases were heard at a single trial. The individual cases for each child were consolidated for this appeal.

**Factual and Procedural Background**

"This Court views the evidence and permissible inferences drawn from the evidence in the light most favorable to the judgment." *In Interest of T.T.G. v. K.S.G.*, 530 S.W.3d 489, 491 (Mo. banc 2017) (citing Rule 73.01(c)).[3] Viewed in this context, the following facts are pertinent to the current appeal.

J.D.M. ("Father") is the biological father of B.D.M. (born in 2012) and J.D.M. (born in 2015). On March 7, 2016, the Children came under the jurisdiction of the Juvenile Division of the Circuit Court of Lawrence County in light of: (1) a domestic altercation between Mother and Father, and (2) Mother's positive test for methamphetamine and other drugs. On April 27, 2016, legal and physical custody of the Children was transferred to the Missouri Department of Social Services, Children's Division ("Children's Division").

Written service agreements were prepared for Father in August 2016, and in January 2017. The service agreements required Father to complete a drug and alcohol assessment, follow recommendations deriving from the assessment, attend AA and NA meetings, and submit to random drug testing. Father failed to comply with the requirements of the service agreements.

On January 11, 2018, the Children's Division filed petitions to terminate parental rights asserting Father had abused and/or neglected the Children by leaving the Children without any provision for parental support and without making arrangements to visit or communicate with the Children, pursuant to section 211.447.2(2)(b);[4] Father suffered from a chemical dependency which prevented him from providing the necessary care, custody and control; and Father failed to provide

---

[3] All rule references are to Missouri Court Rules (2019).

[4] All references to statutes are to RSMo Cum.Supp. 2017, unless otherwise indicated.

the Children with adequate food, clothing, shelter, education, or other care and control necessary for the Children's physical, mental, or emotional health and development.

In addition, pursuant to section 211.447.7, the petitions asserted the Children had little or no emotional ties with Father and any continuation of a relationship would be detrimental to the Children; Father had not provided financially for the Children;[5] that additional services were unlikely to bring about a lasting parental adjustment enabling a return of the Children to Father; and Father had shown a disinterest in and/or lack of commitment to the Children.

A hearing was held on December 14, 2018.[6] Father did not testify. Ashlee Schubert ("Schubert") was the case manager for the Children from July 2016 to July 2017, when she left employment with the Children's Division. Schubert testified that the majority of the time, rather than submit to drug testing, Father would simply admit to using methamphetamine; when Father did submit to drug testing, he would test positive for methamphetamine; Father admitted that he needed treatment for methamphetamine addiction, but when treatment assessments were offered, he would not attend. Schubert also testified that Father failed to take medication for his seizure disorder, as required by to his service agreements.

Schubert testified that another concern was Father's living arrangements. Father would report that he was living with either his boss or a friend, but would never allow Schubert to do home visits. Schubert would schedule times to meet Father at her office, but he would either cancel or not show up.

---

[5] Father was gainfully employed. Mother and Father divorced during the pendency of this case and Father was ordered to pay child support.

[6] The trial court took judicial notice of each child's abuse and neglect case files, as well as support cases for each child.

Father had supervised visits with the Children. Schubert testified that Father was never given unsupervised visits because he never completed the requirements of his service agreements.

Schubert further testified that the case goal was reunification of Father and the Children. Schubert stated she did not believe there were any additional services her agency could offer Father that would aid in the reunification process. Schubert testified that Father did not provide any direct financial support to the Children.

Allison Scharbach ("Scharbach") became the case manager for the Children in July 2017. She testified that when she assumed case management duties, Father was attending supervised visits with the Children at the placement home, but Father demonstrated no cooperation with Children's Division, and still reported using drugs. Due to Father's continued drug use, Father's visitation with the Children remained supervised. Father tested positive for amphetamines and methamphetamine in drug tests on April 2018 and October 2018. Scharbach stated that methamphetamine use by a parent is of concern because when a parent is on methamphetamine, "they generally can't care for the child as they should be cared for. Their driving would be impaired, so they wouldn't be able to . . . take the kids to the ER if they needed to go, or even back and forth to school. It's also very dangerous if the child were to get into that. It, basically, just affects their entire life, but especially their parenting." She testified that there would be a likelihood of future physical harm to the Children if they were in the custody of a person who used methamphetamine.

Scharbach testified that since July 2017, when she assumed case management, Father's service agreements required that he attend drug treatment. She indicated that Father eventually attended Families in Recovery in August 2018, but was no longer participating at the time of trial. Families in Recovery offered meetings, groups, therapy, and church, but Father did not participate

4

in several of these programs, though required by his service agreements.[7] Scharbach indicated that Father's continued methamphetamine use remained an obstacle to Father's reunification with the Children.

Scharbach did not believe there were any services that she could provide the family that would enable the Children to reunify with Father within a reasonable, ascertainable period of time; that the Children's Division had been consistent in providing services that would have enabled reunification; and she did not believe Father had rectified the situation as to why the Children came into care—that being his drug use.

The guardian ad litem testified that the Children's Division had "proven grounds to terminate the parental rights of [Father]." While there was evidence that both children had emotional ties to Father, that Father maintained regular visitation, and that Father made in-kind contributions, the amount of time the Children had been in care demonstrated that additional services would not result in reunification. He believed that while Father was interested in the Children, that commitment was secondary to his methamphetamine use. The continued chemical use by Father "lobbies in favor of granting the petition[,]" and "the best-interest analysis favors that finding."

On February 7, 2019, the trial court entered its "Findings of Fact, Conclusions of Law and Judgment" terminating the rights of Father to the Children. The trial court found, pursuant to section 211.447.5(2), that: (a) Father did not suffer from a mental condition; (b) Father did suffer from a chemical dependency in that he continuously tested positive for methamphetamine throughout the pendency of the case and failed to successfully complete drug treatment; (c) no evidence was presented of a severe or recurrent act of physical, emotional or sexual abuse toward

---

[7] Scharbach testified that Families in Recovery reported one negative urinalysis test. This evidence was not credited by the trial court, and we include this information only for context.

the Children; and (d) Father repeatedly and continuously failed, although physically or financially able, to provide the Children with adequate food, clothing, shelter or education, or other care and control necessary for the Children's physical, mental or emotional health and development.

The trial court found, pursuant to section 211.447.5(3), that the Children had been under the jurisdiction of the juvenile court for a period of one year; the conditions that led to the assumption of jurisdiction still persisted, or conditions of a potentially harmful nature continued to exist; there was little likelihood that those conditions would be remedied at an early date so that the Children could be returned to Father in the near future; and the continuation of the parent-child relationship greatly diminished the Children's prospects for early integration into a stable and permanent home. Additionally, the Court made specific findings pursuant to section 211.447.5(3):

a.  Father refused to participate in substance abuse treatment and individual psychotherapy as recommended and agreed to in numerous Written Service Agreements.

b.  Due to Father's lack of commitment and interest in the Children, the Children's Division had been unsuccessful in aiding Father on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the Children.

c.  No evidence was presented that Father suffered from a mental condition.

d.  Father suffered from a chemical dependency which prevented him from consistently providing the necessary care custody and control of the Children and which could not be treated so as to enable him to consistently provide such care, custody and control. Evidence was presented that Father continuously tested positive for methamphetamine throughout the pendency of the case. Father failed to successfully complete drug treatment.

The trial court also made the following findings, pursuant to section 211.447.7:

(1)  The trial court found that while there were emotional ties that existed between Father and the Children, said ties were unhealthy and detrimental to the Children and that termination of Father's parental rights served the Children's needs for permanency after nearly three years in foster care.

6

(2)     Father maintained regular visitation or contact with the Children, however, due to lingering concerns of substance abuse, his visitation never progressed beyond a supervised environment.

(3)     Father had not provided for the cost of care and maintenance when financially able to do so, including the time the Children had been in the custody of the Children's Division.

(4)     That additional services were not likely to bring about a lasting parental adjustment enabling a return of the Children to Father within an ascertainable period of time. Children's Division offered a plenitude of services to Father in an attempt to rectify concerns for his mental health and substance abuse. Due to Father's failure and refusal to cooperate with said services, reunification with the Children was not possible.

(5)     Father showed a disinterest in and lack of commitment to the Children by failing and refusing to participate in mental health and substance abuse treatment.

(6)     Father had not been convicted of a felony offense that the court found to be of such nature that the Children would be deprived of a stable home for a period of years.

(7)     There were no deliberate acts of Father or acts of another of which Father knew or should have known that subjected the Children to a substantial risk of physical or mental harm.

The trial court concluded that based upon the clear, cogent and convincing evidence presented, it was in the best interest of the Children that Father's parental rights be fully, finally and forever terminated. This appeal followed.

In two points on appeal, Father asserts:

POINT RELIED ON I

The trial court erred in terminating natural father['s] . . . parental rights because the court's determination that the grounds for termination pursuant to Section 211.447.5(2) were proven by clear, cogent, and convincing evidence is against the weight of the evidence in that, contrary to the court's finding in its Judgment, Father had not previously been found to have abused or neglected the minor children; though Father had tested positive for methamphetamine during the case, the most recent UA tests were negative; contrary to the court's finding in the Judgment, Father had provided in-kind support during the case; Father and the minor children have a close bond; the evidence showed that supervised visits have been wholly successful between Father and the minor children; and the bond

between Father and the children, when considered in light of the standard of review, requires that the parent-child relationship be maintained.

POINT RELIED ON II

The trial court erred in terminating father['s] . . . parental rights because the court's determination that the grounds for termination pursuant to Section 211.447.5(3) were proven by clear, cogent, and convincing evidence is against the weight of the evidence in that, though Father did not strictly comply with the service agreements, he attended the Families in Recovery program, went to his own church, and passed random UA drug tests; Father maintained an appropriate home throughout the case; Father was consistent in his attendance at supervised visits and the visits were, by all accounts, successful; though Father had tested positive for methamphetamine during the case, the most recent UA tests were negative; Father and the minor children have a close bond; and the bond between Father and the children, when considered in light of standard of review, requires that the parent-child relationship be maintained.

**Standard of Review**

This Court reviews whether there was clear, cogent, and convincing evidence to support a statutory ground for terminating parental rights . . . under the standard of review set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976):

> The trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong.

On appeal, Father contends the circuit court's conclusions . . . are against the weight of the evidence. Appellate courts act with caution in exercising the power to set aside a decree or judgment on the ground that it is against the weight of the evidence. A claim that the judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment. The against-the-weight-of-the-evidence standard serves only as a check on a circuit court's potential abuse of power in weighing the evidence, and an appellate court will reverse only in rare cases, when it has a firm belief that the decree or judgment is wrong. When reviewing the record in an against-the-weight-of-the-evidence challenge, this Court defers to the circuit court's findings of fact when the factual issues are contested and when the facts as found by the circuit court depend on credibility determinations. A circuit court's judgment is against the weight of the evidence only if the circuit court could not have reasonably found, from the record

at trial, the existence of a fact that is necessary to sustain the judgment. When the evidence poses two reasonable but different inferences, this Court is obligated to defer to the trial court's assessment of the evidence. This Court rarely has reversed a trial judgment as against the weight of the evidence.

***S.S.S. v. C.V.S.***, 529 S.W.3d 811, 815–16 (Mo. banc 2017) (internal quotations and citations omitted).

## Analysis

In two points, Father argues that the trial court's adverse statutory findings as to section 211.447.5(2) (abuse or neglect) and section 211.447.5(3) (failure to rectify) were against the weight of the evidence. Father does not challenge the trial court's best interest determinations, and our treatment of Father's second point is dispositive.

Father's second point challenges that the trial court's section 211.447.5(3) determination that Father failed to rectify the conditions that led to the assumption of jurisdiction, was against the weight of the evidence.

Section 211.447.5(3) directs the trial court to consider whether:

The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following:

(a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;

(b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;

9

(c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

(d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control[.]

The trial court made the following findings in explicit consideration of section 211.447.5(3):

2.      [T]he Court finds the [Children have] been under the jurisdiction of the juvenile court for a period of one year, and the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, and there is little likelihood that those conditions will be remedied at an early date so that the [Children] can be returned to the parent in the near future, and the continuation of the parent-child relationship greatly diminishes the [Children]'s prospects for early integration into a stable and permanent home. Additionally, the Court makes specific findings pursuant to RSMo. 211.447.5(3) as follows:

a.      Natural Father has failed to comply with a social service plan with Children's Division. Father refused to participate in substance abuse treatment and individual psychotherapy as recommended and agreed to in numerous Written Service Agreements.

b.      Due to the Natural Father's lack of commitment and interest in the [Children], the Children's Division has been unsuccessful in aiding the Natural Father on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the [Children].

c.      No evidence was presented that Natural Father suffers from a mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the Natural Father unable to knowingly provide the [Children] the necessary care, custody and control.

d.      Natural Father suffers from a chemical dependency which prevents him from consistently providing the necessary care[,] custody and control of the [Children] and which cannot be treated so as to enable

10

him to consistently provide such care, custody and control. Evidence was presented that Natural Father continuously tested positive for methamphetamine throughout the pendency of this case. Natural Father failed to successfully complete drug treatment[.]

Father asserts that "though there existed in the record some evidence to support the court's finding, the weight of the evidence in fact did not support the trial court's finding and, in fact, supported a denial of the petition to terminate Father's rights."

Our Supreme Court explained the significant obstacles to a successful against-the-weight-of-the-evidence challenge in *Ivie v. Smith*, 439 S.W.3d 189, 205-06 (Mo. banc 2014):

Appellate courts act with caution in exercising the power to set aside a decree or judgment on the ground that it is against the weight of the evidence. A claim that the judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment. In other words, weight of the evidence denotes an appellate test of how much persuasive value evidence has, not just whether sufficient evidence exists that tends to prove a necessary fact. *See White v. Dir. of Revenue*, 321 S.W.3d 298, 309 (Mo. banc 2010) (stating that "weight" denotes probative value, not the quantity of the evidence). The against-the-weight-of-the-evidence standard serves only as a check on a circuit court's potential abuse of power in weighing the evidence, and an appellate court will reverse only in rare cases, when it has a firm belief that the decree or judgment is wrong.

When reviewing the record in an against-the-weight-of-the-evidence challenge, this Court defers to the circuit court's findings of fact when the factual issues are contested and when the facts as found by the circuit court depend on credibility determinations. A circuit court's judgment is against the weight of the evidence only if the circuit court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment. When the evidence poses two reasonable but different conclusions, appellate courts must defer to the circuit court's assessment of that evidence.

This Court defers on credibility determinations when reviewing an against-the-weight-of-the-evidence challenge because the circuit court is in a better position to weigh the contested and conflicting evidence in the context of the whole case. The circuit court is able to judge directly not only the demeanor of witnesses, but also their sincerity and character and other trial intangibles that the record may not completely reveal. Accordingly, this standard of review takes into consideration which party has the burden of proof and that the circuit court is free to believe all,

11

some, or none of the evidence offered to prove a contested fact, and the appellate court will not re-find facts based on credibility determinations through its own perspective. This includes facts expressly found in the written judgment or necessarily deemed found in accordance with the result reached. Rule 73.01(c)[.] Evidence not based on a credibility determination, contrary to the circuit court's judgment, can be considered in an appellate court's review of an against-the-weight-of-the-evidence challenge.

*Ivie*, 439 S.W.3d at 205–06 (internal quotations and citations omitted).

These principles are reflected in the four-step analytical sequence set out in ***Houston v. Crider***, 317 S.W.3d 178 (Mo.App. S.D. 2010):

(1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;

(2) identify all of the favorable evidence in the record supporting the existence of that proposition;

(3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,

(4) demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

*Id.* at 187.

Attempting to follow ***Houston***, Father identifies his "challenged factual propositions" as inclusive of all of the trial court's findings pursuant to section 211.447.5(3). Father's attempts at satisfying step two (the favorable evidence in the record) are largely satisfactory, and Father conceded at oral argument that "there was evidence to suggest to the contrary of [Father's argument]."

Father's argument runs afoul in steps three and four, wherein he fails to account for the trial court's *implicit* credibility determinations. *See Ivie*, 439 S.W.3d at 205-06; Rule 73.01(c).[8] For instance, Father relies on evidence that he attended Families in Recovery in Mount Vernon, and only failed to participate in many of the programs there "because he would work late." Father also relies on evidence that when Families in Recovery would "offer[] random drug tests, he passed[.]" Father points to nothing in the judgment that indicates the trial court credited such evidence. Rather, the judgment's explicit and implicit findings direct that the trial court did not credit it.[9]

Here, the *credited* evidence reflects that Father's written service agreements required that he complete a drug and alcohol assessment, attend AA or NA meetings, and submit to random drug tests. Father would concede that he needed drug treatment, and then consistently fail to attend assessments for treatment. When Father attended Families in Recovery, he failed to participate in several of the offered services (which were required by his service agreements). In the majority

---

[8] "Whether reviewing a substantial-evidence challenge or an against-the-weight-of-the-evidence challenge, we do not consider (and it is incumbent upon appellant not to rely on) evidence that was not credited by the trial court." *In Interest of J.A.L.*, 547 S.W.3d 804, 813 (Mo.App. S.D. 2018).

As applicable here:

> [I]n an against-the-weight-of-the-evidence challenge, this Court considers certain evidence contrary to the judgment in the third and fourth steps of the analytical sequence, pursuant to *Houston*—*i.e.*, where the appellant demonstrates: (1) the evidence was offered by a party with no burden of proof as to the ultimate issue for which that evidence was offered; (2) the efficacy of that evidence is not based on a credibility determination; and (3) the evidence is uncontested, uncontradicted, and not disputed in any matter. Where these elements are satisfied, there is no credibility determination for the trial court to make—rather, the only task for the trial court (and this Court) is to determine the legal effect of such evidence.

*J.A.L.*, 547 S.W.3d at 813-14 (citing *White*, 321 S.W.3d at 307-08). In other words, an appellant must demonstrate that evidence contrary to the judgment was: "(1) subject to the trial court's fact-finding, . . . and was credited by the trial court; or (2) contrary evidence embraced by *White*'s prerequisites." *J.A.L.*, 547 S.W.3d at 814.

[9] *See In the Matter of A.L.R.*, 511 S.W.3d 408, 414 (Mo. banc 2017) (An against-the-weight-of-the-evidence challenge "is not an opportunity for an appellant to receive a new factual determination from a different court.").

of the instances where Father was asked to submit to drug testing, Father would simply admit to drug usage and not submit to testing. On the few occasions Father did submit to testing, he consistently tested positive for drug use.[10]

This evidence warranted the trial court's finding that "Natural Father suffers from a chemical dependency which prevents him from consistently providing the necessary care[,] custody and control of the [Children] and which cannot be treated so as to enable him to consistently provide such care, custody and control." Proof of this "factor[] is sufficient to support termination on the statutory ground of neglect." *Missouri Dept. of Social Services, Children's Div. v. B.T.W.*, 422 S.W.3d 381, 392 (Mo.App. W.D. 2013). Father's Point II is therefore denied.

Proof of one ground is "sufficient to support termination of parental rights." *In re J.J.B.*, 314 S.W.3d 425, 430 (Mo.App. W.D. 2010) (internal quotation and citation omitted). As such, we need not reach Father's Point I, which merely challenges an additional ground for termination. Father's Point II is therefore denied.

The judgment of the trial court is affirmed.

WILLIAM W. FRANCIS, JR., J. - OPINION AUTHOR

GARY W. LYNCH, P.J. - CONCURS

NANCY STEFFEN RAHMEYER, J. - CONCURS

---

[10] The evidence concerning a single negative urine analysis test from Families in Recovery, upon which Father heavily relies, was impliedly not credited, and is therefore inapplicable in an against-the-weight-of-the-evidence challenge.

14