

# SUPREME COURT OF MISSOURI
## en banc

IN THE INTEREST OF J.A.R., D.K.R., AND )
A.E.R., CHILDREN UNDER SEVENTEEN )
YEARS OF AGE, GREENE COUNTY )
JUVENILE OFFICE , )
                       )
               Respondent, )
                       )
v. ) No. SC93649
                       )
D.G.R., )
                       )
              Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY
The Honorable William R. Hass, Judge

### Opinion issued April 1, 2014

D.G.R. ("Father") appeals from judgments terminating his parental rights to his children, J.A.R., D.K.R., and A.E.R. (collectively the "Children"). The circuit court concluded that Father abandoned and neglected the Children,[1] that he failed to rectify conditions that led to the Children coming into care,[2] and that termination of Father's parental rights was in the best interest of the Children. Father appealed, challenging the sufficiency of the evidence to support these findings. Because the circuit court's determinations that Father neglected his children and that it is in the best interest of the

---

[1] See § 211.447.5(1) and (2). Statutory references are to RSMo Supp. 2011.
[2] See § 211.447.5(3). This ground commonly is referred to as "failure to rectify." *C.V.E. v. Greene County Juv. Off.*, 330 S.W.3d 560, 566 n.3 (Mo. App. 2010).

Children to have his parental rights terminated are supported by substantial evidence, the judgment is affirmed.[3]

## Standard of Review

Appellate review of termination of parental rights is set out in this Court's recent decision in *In re Adoption of C.M.B.R.*, 332 S.W.3d 793 (Mo. banc 2011), which reinforced the generally accepted principle in all types of bench-tried cases that circuit courts are better positioned to determine witness credibility and weigh evidence in the context of the whole record than an appellate court.

> This Court reviews whether clear, cogent, and convincing evidence was presented to support a statutory ground for terminating parental rights under *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Therefore, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. The judgment will be reversed only if we are left with a firm belief that the order is wrong.
>
> Conflicting evidence will be reviewed in the light most favorable to the trial court's judgment. Appellate courts will defer to the trial court's credibility assessments. When the evidence poses two reasonable but different inferences, this Court is obligated to defer to the trial court's assessment of the evidence.
>
> . . .
>
> After this Court determines that one or more statutory ground has been proven by clear, convincing, and cogent evidence, this Court must ask whether termination of parental rights was in the best interest of the child. At the trial level, the standard of proof for this best interest inquiry is a preponderance of the evidence; on appeal, the standard of review is abuse of discretion.

---

[3] Termination of parental rights requires: 1) that the circuit court find by clear, cogent, and convincing evidence that one or more grounds for termination exist under subsections 2, 3, or 4 of section 211.447; and 2) the circuit court must find that termination is in the best interests of the child. Section 211.447.6.

*Id.* at 815-16. (internal citations and quotation marks omitted); *see also In re Q.A.H.*, ___ S.W.3d ___ (Mo. banc 2014) (No. SC93677, slip op. at 7-8, decided March 25, 2014).[4]

The circuit court made extensive findings of fact and conclusions of law. Rule 73.01 additionally provides "[A]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached."[5]

In reviewing questions of fact, the reviewing court is to recognize that the circuit court is free to disbelieve any, all, or none of the evidence, and it is not the reviewing appellate court's role to re-evaluate the evidence through its own perspective. *Pearson v. Koster*, 367 S.W.3d 36, 44 (Mo. banc 2012). "The trial court receives deference on factual issues because it is in a better position not only to judge the credibility of the witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record." *Id.* (internal quotation marks omitted).

### Procedural and Factual Background

Father, a California resident, was having difficulty providing for the Children. In July 2010, he sent the Children to Missouri to live with a couple whom the Children

---

[4] *C.M.B.R.* laid to rest any argument that the "clear, cogent, and convincing" burden of proof requires this Court to consider any contrary evidence when reviewing whether the judgment is supported by substantial evidence.

[5] Further, this Court's Rule 78.07(c) provides: "In all cases, allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review." Every district of the court of appeals has held, and this Court agrees, that Rule 78.07(c) applies to termination of parental rights cases. *In re J.L.G.*, 399 S.W.3d 48 (Mo. App. S.D. 2013); *In re G.G.B.*, 394 S.W.3d 457 (Mo. App. E.D. 2013); *In re C.K.*, 221 S.W.3d 467 (Mo. App. W.D. 2007). No motion pursuant to Rule 78.07(c) was filed in this case; therefore, it would not be appropriate to criticize the circuit court for failing to make any required finding.

3

viewed as their maternal grandparents. Father said he intended to leave California and move to Missouri within a few weeks. In the months that followed, Father repeatedly promised to visit the Children but failed to follow through on his promises. Around November 2010, the Children began to live with their mother in Springfield.

In March 2011, the Children came to the attention of the Children's Division due to Mother's intoxication and failure to supervise the Children.[6] An investigator contacted possible custodians, including Father, but Father did not have suitable housing for the Children or the ability to get them from Missouri. The Children were taken into protective custody.

The Children remained in care, and consistent with the case goal of reunification, a treatment plan was prepared and ordered into effect for Father. Among other things, the court expected Father to obtain and maintain suitable housing.

Shortly after the Children came into care, Father advised the Children's caseworker that he had housing and was employed but provided no verification. He said he was coming to Missouri in the near future. At that time, the Children wanted to be reunited with Father in Missouri.

Father remained in contact with the Children's caseworker but made little progress on his treatment plan. The caseworker offered to initiate a request under the Interstate Compact for the Placement of Children ("ICPC") so that Father could get services in California, but Father declined, stating that he intended to move to Missouri sometime

---

[6] Mother's parental rights also were terminated. She is not a party to this appeal.

4

between September and November 2011. Father could have, but did not, work on his treatment plan while in California.[7]

Early on, Father maintained contact with the Children by telephone. The Children initially enjoyed and looked forward to those calls. During the calls, Father typically disparaged Mother and promised visits that never occurred. Each time Father broke a promise, the Children felt very disappointed and let down. As time progressed, the Children preferred not to talk to Father because they "didn't even want to hear it any more." Sometime prior to March 2012, the Children had lost trust in Father, and the telephone calls were discontinued at the Children's request. At no point did the Children ever ask to call Father. Father was encouraged to write letters to the Children but he typically failed to do so, sending only two letters the entire time the Children were in care.

---

[7] A caseworker testified:
Q. And again, now does [Father] have appropriate housing?
A. No.
Q. Does he have employment?
A. No.
Q. How has his situation gotten better than it was when you took over this case over a year ago?
A. He's in the state of Missouri, and a treatment plan can be started. That's about it.
Q. Could a treatment plan been worked on in California?
A. Yes.
Q. Would that have required a service worker?
A. Yes.
Q. Did he request a service worker?
A. No.
Q. Did you ever make the statement to [Father] that he would have a bigger better chance of getting the children back if he were homeless in Missouri than he would staying in California?
A. Yeah, I've said that.
Q. Is that your belief?
A. Yes.
Q. Why is that?
A. Because in California he wasn't working on a treatment plan.

Father provided financial support for the Children in 2010 and 2011, but not in 2012. He sent $3,000 in July 2011 to be placed in savings for the Children, but Father subsequently directed that $2,450 of those funds be used for his purposes, $2,000 of which went to pay a portion of Father's fines. Father was capable of working and reported that he was working much of the time the Children were in care. Father provided no financial support for the children after July 2011.

In March 2012, Father came to Missouri to attend a permanency hearing and to make preparations to move here that month or the next. Father arrived several days later than he said he would, then cut the trip short and skipped the hearing,[8] after which the circuit court changed the Children's case goal to adoption and found no exceptions to the statutorily required filing of termination of parental rights petitions. By the end of the next month, Father had not moved to Missouri, and the Juvenile Office had filed the underlying cases.

In June 2012, Father announced that he intended to remain in California. Unbeknownst to the Children's caseworker, Father had signed a one-year lease for a

---

[8] Q. And there was a court hearing that [Father] said he would specifically be here for, correct?
A. Yes.
Q. And we had worked around trying to get everybody to set up a meeting to meet with him while he was here?
A. Yeah, we scheduled a special FST so that he could be here.
Q. Did he appear for court?
A. No.
Q. Did he appear for the meeting?
A. No.
Q. Had he, in fact, indicated that he had left earlier that morning, that he had to get back?
A. Yes. I don't remember if it was in the morning, but he did have to leave early.
Q. So he got here intending to be here for the court hearing but then indicated he had to leave before the court hearing?
A. Yes.

residence in California, listing the residents as one adult and three children. The Children's caseworker requested an ICPC home study, which later was denied due to, among other reasons, Father's stated intent to move to Missouri.

In late September 2012, a few days prior to the trial, Father abruptly moved to Missouri without any notice to the Children's caseworker. Father was unemployed and living in his vehicle. At trial, the evidence was that the Children had not seen Father since July 2010. The Children, then 11, 12, and 13 years old, all felt neglected because Father never followed through on his promises and failed to put forth effort on their behalf. None of the Children wanted to see Father or be reunified with him. A.E.R. felt abandoned by Father and feared that Father would get back together with Mother and beat her again. D.K.R. was very vocal in his disappointment with Father and wanted nothing to do with him.

Reunification was not a possibility at the time of trial or in the near future because Father could not support the Children, Father had no suitable home for the Children, the Children did not want to be reunified with Father, and family therapy would be needed before even supervised visitation could be considered. The Children's caseworker, while sympathetic to Father, conceded that his situation was little improved and that reunification could take "a very long time" given Father's lack of progress.

The Children's Division and the Children's guardian ad litem (GAL) recommended termination of Father's parental rights. Father attended the trial but elected not to testify.

The circuit court found three separate legal grounds for termination of parental rights were supported by the record—abandonment, neglect, and failure to rectify. The

7

circuit court also found and concluded that termination of parental rights would be in the Children's best interest. Father appealed the judgments terminating his parental rights to the court of appeals, which affirmed the circuit court.[9]

## A Party is Not Permitted To Make A Claim After Transfer That Was Not Presented To The Court of Appeals

Several of Father's points on appeal in his substitute brief filed in this Court assert that the circuit court's findings are against the weight of the evidence. However, this argument is not preserved for review in this Court because Father did not present such a claim in his brief filed in the court of appeals. A party may not raise claims for the first time in this Court and "shall not alter the basis of any claim that was raised in the brief filed in the court of appeals." Rule 83.08(b); *State v. Moore*, 303 S.W.3d 515, 523 (Mo. banc 2010); *Blackstock v. Kohn*, 994 S.W.2d 947, 953 (Mo. banc 1999) ("The Blackstocks did not raise this claim before the court of appeals. This Court, therefore, may not review the claim."); *Linzenni v. Hoffman*, 937 S.W.2d 723, 726-27 (Mo banc 1997) (holding that claims not raised in the brief before the court of appeals were not preserved for review in this Court).

None of the points relied on in Father's brief to the court of appeals claimed that any of the circuit court's findings were against the weight of the evidence. Father's points relied on in the court of appeals alleged that insufficient evidence supported the circuit

---

[9] After opinion by the court of appeals, authored by Honorable Daniel E. Scott, and a dissenting opinion by Honorable Nancy Steffen Rahmeyer, which certified that the majority opinion was contrary to a previous decision of the court of appeals, this case was transferred to this Court pursuant to Rule 83.03. Portions of this Court's opinion are adopted from the opinion authored by Judge Scott without further attribution.

court's finding of abandonment, neglect, and failure to rectify, but he did not allege that any of these findings were against the weight of the evidence. To be successful on a claim that there was insufficient evidence, Father would be required to demonstrate that there was no substantial evidence to support the circuit court's judgment. *White v. Dir. of Revenue*, 321 S.W.3d 298, 308-09 (Mo. banc 2010) (holding that, when reviewing challenges to factual findings, the Court "confines itself to determining whether substantial evidence exists to support the trial court's judgment."). On the other hand, a claim that the judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment. *See Pearson*, 367 S.W.3d at 51 ("[T]he term 'weight' refer[s] to the probative value (not quantity) of the evidence ….").

Particularly relevant to the analysis of this Court's opinion is that Father's second point relied on in his brief filed in the court of appeals did not claim that the circuit court's finding of neglect was against the weight of the evidence. Rather, it claimed that "the evidence was insufficient to support a finding" of neglect. The only case cited by Father to support his second point relied on in the court of appeals was *In re W.C.*, 288 S.W.3d 787 (Mo. App. 2009), which is a case that reversed a circuit court's judgment terminating parental rights because there was "no evidence" to support any statutory ground for terminating parental rights. The appellate court in *W.C.* was not asked to and did not engage in an "against-the-weight-of-the-evidence" analysis which is distinctly different than a claim that a judgment is not supported by substantial evidence.

Father, therefore, has raised the "against-the-weight-of-the-evidence" argument for the first time in this Court. Because Father did not raise this claim in his brief to the court of appeals, the claim is not preserved for review in this Court.[10]

## Analysis of Neglect Determination

Father claims there is insufficient evidence to support all three termination of parental rights grounds found by the court. The circuit court's judgment will be affirmed if the record supports at least one ground and supports that termination is in the best interest of the children. *C.M.B.R.*, 332 S.W.3d 793, 815. Because there is substantial evidence to support the circuit court's determination of neglect as defined in § 210.110(12), this opinion does not require that his challenges to the findings of abandonment and failure to rectify be addressed. *Id.*

Section 211.447.5(2) provides that parental rights may be terminated if the child has been abused or neglected. Neglect is defined as "failure to provide, by those responsible for the care, custody, and control of the child, the proper or necessary support, education as required by law, nutrition or medical, surgical, or any other care necessary for the child's well-being[.]" Section 210.110(12). And § 211.447.5(2)(d) provides that, when determining whether neglect has occurred, the court should consider, and make specific factual findings regarding, any "[r]epeated or continuous failure by the

---

[10] Additionally, in the event a party did desire to present an argument on appeal that the circuit court's findings regarding the statutory grounds for termination were not supported by substantial evidence *and* were against the weight of the evidence, those challenges would need to be raised in two separate points relied on because they involve two distinct legal claims. Rule 84.04. For the proposition that "against the weight of the evidence" and "not supported by substantial evidence" claims are distinct legal claims, see *Pearson v. Koster*, 367 S.W.3d 36, 43-44, 51-52 (Mo. banc 2012); *C.M.B.R.*, 332 S.W.3d 793, 815-16; *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the child's physical, mental, or emotional health and development."

The evidence viewed in the light most favorable to the circuit court's judgment is that Father failed to provide for the Children's needs, including their need for a suitable home. The Children came into care and custody in part due to Father's inability to meet their needs. The Children had been in protective care and custody for a year and a half as of the trial, yet Father was in no better position to provide for their needs than at the time they were placed in protective custody. He had not contributed to the Children's care and support for more than 14 months preceding the trial. Father's history of support payments in 2010 and 2011 show that Father knew he was obligated to support the Children and had the ability to do so. When given the opportunity to explain his actions or his situation at the trial, Father elected not to testify.[11] The record and reasonable inferences support the circuit court's finding that Father repeatedly or continuously failed to provide for the Children's needs. *See* Section 211.447.5(2)(d).

The evidence also established that Father neglected his relationship with the Children to the point that the Children refused to speak to him. He had not visited the Children since he sent them to Missouri in 2010. He could have maintained contact with

---

[11] It is a well-settled principle that the failure of a party, having knowledge of the facts and circumstances vitally affecting the issues at trial, to testify on his or her own behalf raises a strong presumption that such testimony would have been unfavorable to the party. *In re S.M.B., Jr.*, 254 S.W.3d 214, 220-21 (Mo. App. 2008); *see also Bair v. Faust*, 408 S.W.3d 98, 103 (Mo. banc 2013) (stating that the adverse inference rule "allows for 'an unfavorable inference to be drawn against a party, knowledgeable of the facts of the controversy, who *fails* to testify'"). This principle applies in cases, such as this one, involving the termination of parental rights. *See S.M.B.*, 254 S.W.3d at 220.

11

the Children by telephone or letter, but he typically failed to send letters, and his failed promises made by telephone may have caused more harm than good. Given this evidence, the court did not err in finding, "The only thing the father seems to have been consistent in is telling the [Children] that he would be coming to visit and then failing to follow through."

Father's argument that the circuit court's findings of neglect are not supported by sufficient evidence fails to recognize the favorable testimony and evidence in the record, glosses over key facts in the record, and focuses on contrary evidence that the circuit court may not have believed. The principal opinion in *C.M.B.R.* reaffirmed the principle that when determining sufficiency of the evidence in termination of parental rights cases, which have the "clear, cogent, and convincing burden of proof," conflicts in the evidence will be reviewed in the light most favorable to the trial court's judgment. *C.M.B.R.*, 332 S.W.3d at 815; *In re Q.A.H.*, ___ S.W.3d ___ (Mo. banc 2014) (No. SC93677, decided March 25, 2014). Not only does Father's argument ignore our standard of review,[12] it ignores the law that the circuit court can believe all, part, or none of the testimony of any witness. The circuit court's finding of neglect is supported by substantial evidence on the record.

---

[12] See, e.g., *In re I.G.P.*, 375 S.W.3d 112, 126-27 (Mo. App. 2012); *In re T.L.B.*, 376 S.W.3d 1, 11 (Mo. App. 2011); *In re K.M.W.*, 342 S.W.3d 353, 360-61 (Mo. App. 2011); *In re X.D.G.*, 340 S.W.3d 607, 617-18 (Mo. App. 2011); *In re K.L.C.*, 332 S.W.3d 330, 341 n.10 (Mo. App. 2011). Although Father identifies a challenged proposition – the finding of neglect – he fails to identify favorable evidence in the record or explain why that evidence and its reasonable inferences are such that the court could not reasonably decide that Father neglected the Children. Without any of this analysis, Father's argument lacks any analytical or persuasive value.

## Analysis of Best Interest Determination

Father also claims there is insufficient evidence to support the circuit court's determination that termination of parental rights was in the Children's best interest. In any termination of parental rights, the primary concern must be the best interest of the child.[13] "At the trial level, the standard of proof for this best-interest inquiry is a preponderance of the evidence; on appeal, the standard of review is abuse of discretion." *C.M.B.R.*, 332 S.W.3d at 816.

In her recommendation to the circuit court, which is contained in this record, the GAL summarized some of the reasons why termination of parental rights was in the Children's best interest:

> [Q]uite frankly, they have just given up. There's . . . nothing more they can lose than hope. And that is exactly what these kids have lost. They have gone -- they are miles ahead of us, you know, in this endeavor. They are already looking for closure. They are looking to get on with their new life because they have lost hope in their parents. They have listened repeatedly, repeatedly to promises.
>
> . . .
>
> You know, we're no further than we were the day we started this case. Not one bit further other than the fact that the [C]hildren have become increasingly distant from their parents, and I can't imagine how many years of therapy it would take for these kids to agree to live with either one of these people again. We're not even at supervised visits.

---

[13] Section 211.447.7 requires that the court make specific findings related to the best interest of the child if the court has previously found a statutory basis for the termination of parental rights. However, as previously stated, Rule 78.07(c) provides: "In all cases, allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review." No such motion was filed in this case.

Among the statutory best interest considerations, the circuit court found that the Children did not want to have contact with Father (lack of emotional ties); that Father had not maintained regular contact with the Children; that Father failed to provide for the cost of the Children's care and maintenance, although able to do so; and that Father had demonstrated a disinterest in, or lack of commitment to, the Children. As the GAL noted at trial, it had "been two years since [Father] has seen his children. And quite frankly, they have just given up." The court's findings on these factors are supported by the record as this Court must view it under the standard of review.

Father's argument on this point ignores the testimony and evidence favorable to the circuit court's findings and conclusions and merely recites evidence and purported inferences favorable to his position.[14] Father's failure to consider our standard of review, as with his previous "not-supported-by-substantial-evidence" argument, makes his challenge to the circuit court's best interest findings of no analytical or persuasive value.

## Conclusion

The circuit court's findings on neglect and best interest are supported by evidence in the record. This Court affirms the judgment terminating Father's parental rights to J.A.R., D.K.R., and A.E.R.

_____
Zel M. Fischer, Judge

All Concur.

---

[14] It is axiomatic that, when evidence "poses two reasonable but different inferences, this Court is obligated to defer to the trial court's assessment of the evidence." *C.M.B.R.*, 332 S.W.3d at 815. It seems obvious, from the findings and conclusions contained in the judgment, that the circuit court put little or no stock in various factual assertions made by Father.