

# Missouri Court of Appeals

### Southern District

### Division Two

| | | |
|---|---|---|
| IN THE INTEREST OF:<br>M.B.N., a child under seventeen years of age. | ) ) ) ) | |
| GREENE COUNTY JUVENILE OFFICE, | ) ) | |
|       Petitioner-Respondent, | ) ) | |
| vs. | ) ) ) | No. SD33397 |
| E.R.N., | ) ) ) | **Filed: April 13, 2015** |
|       Respondent-Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable David C. Jones, Circuit Judge

### <u>AFFIRMED</u>

E.R.N. ("Mother"), the mother of M.B.N. ("Child"), brings this appeal from the judgment terminating her parental rights to Child. In her first three points, she challenges the statutory bases for the termination and in her fourth point she challenges that it is in the best interest of Child to have Mother's parental rights terminated. We affirm the judgment.

1

Child, who was born in 2002, came into the care of the Children's Division in 2010, as a result of his own severe behavioral problems. At the same time, Child's older sibling, who was at C-Star for substance abuse issues, was taken into protective custody. A hotline was received that Child had such a severe meltdown at school that the classroom was evacuated. The principal stated that Child behaved when he was on his medication but, over the few weeks prior to the meltdown, Child's behaviors had gotten worse and more aggressive. Mother had told the school principal that she was running low on Child's medication, which was a patch. The Children's Division worker felt that Mother was unreceptive to input from the Children's Division, but Mother was told that she needed to address Child's medication issue immediately. Mother told the principal that she did not have money for medication and was giving Child half the dosage of his medication.

Mother had received services from the Children's Division during several periods of time prior to this hotline referral. Mother took Child to the emergency room due to an "accidental" overdose; she said she gave him more medication because his behavior had been worsening. Custody was taken in June 2010, after a juvenile conference with a determination that Mother was acting "very erratic." Mother was told she needed to address her own mental health needs. The court found removal was necessary due to Mother's improper supervision of Child, inappropriate parenting, and abuse by intentionally giving an overdose of medication. After custody had been taken, Mother was put on a 96-hour hold because of her comments concerning going to sleep and not waking up.

While Child was in foster care, his behavior continued to regress. He was first in a traditional foster home but was moved because the foster parent was afraid for the life of her biological child. Child was hospitalized and then moved to a career foster home, with all placements indicating he had the same behavior issues that he had before he came into custody. He was placed in at least three different facilities. At the time of trial he was in a very structured group facility, Butterfield, and continued to have negative behavior issues, causing him to be in seclusion. He is on at least six different medications at Butterfield. An aunt had a home study requesting custody, but was not approved. No other family members stepped forward as a possible placement and there was no future placement available, other than the group home, at the time of trial. The Children's Division "hoped that there might be someone out there" as an available placement if Mother's parental rights were terminated.

At this same time, the Children's Division reported that Mother did not have stable housing or employment and had problems with visitation because Child had a history of running away, and also because the Children's Division felt Mother did not have a "nurturing ability." It was recommended that Mother take parenting classes and family therapy. Mother sought therapy from Ms. Courtney-Miller, who indicated that the number one issue to address was Mother's unresolved grief and loss bereavement arising from the murder of her oldest son and the loss of Child to protective custody. Many of Mother's symptoms of depression, anxiety, stress, sleep disturbances, outbursts of anger, difficulty maintaining focus and concentration, and disruptions in appetite were due to recollections of her son's death. The symptoms were a "walking diagnosis for post-traumatic stress disorder." The therapist stated that Mother's depression adversely

3

impacted her ability to parent Child at the time or to even care for herself but suggested that there was a reasonable likelihood that the mental health issues would be rectified within an ascertainable period of time; however, the impending murder trial was forcing Mother into continual trauma.

In addition to her personal issues of depression, Mother was involved in a relationship where there was domestic violence. After Child went into care, Mother had substance-abuse issues, including positive drug tests for methamphetamine and a failure to appear for drug testing. She also failed to appear for visitation and family visits and stopped attending grief counseling over the death of her older child. At the time of trial, the Children's Division was unaware of whether Mother had a stable residence and appropriate home or stable employment. Child was placed three hours from Mother's home. Though Mother could have had some assistance with transportation, she rarely availed herself of it.

> "This Court reviews whether clear, cogent, and convincing evidence was presented to support a statutory ground for terminating parental rights under *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). Therefore, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. The judgment will be reversed only if we are left with a firm belief that the order is wrong.
>
> Conflicting evidence will be reviewed in the light most favorable to the trial court's judgment. Appellate courts will defer to the trial court's credibility assessments. When the evidence poses two reasonable but different inferences, this Court is obligated to defer to the trial court's assessment of the evidence.
>
> . . . .
>
> After this Court determines that one or more statutory ground has been proven by clear, convincing, and cogent evidence, this Court must ask whether termination of parental rights was in the best interest of the child. At the trial level, the standard of proof for this best interest inquiry

4

is a preponderance of the evidence; on appeal, the standard of review is abuse of discretion."

*J.A.R. v. D.G.R.*, 426 S.W.3d 624, 626 (Mo. banc 2014) (quoting *In re Adoption of C.M.B.R.*, 332 S.W.3d 793, 815-16 (Mo. banc 2011)). "The circuit court's judgment will be affirmed if the record supports at least one ground and supports that termination is in the best interest of [Child]." *Id.* at 630.

With that standard of review in mind, we will thus address the claimed error in Mother's third point: that Mother had failed to rectify the conditions that led to Child's placement in care and that conditions of a potentially harmful nature still existed such that Child could not be returned to Mother in the near future.

Mother admits that she had "missteps in addressing her own therapy issues" but states that these missteps were primarily a result of the post-traumatic stress caused by the murder and subsequent trial for the murder of her older son. Mother points to the evidence of her therapist that Mother could address the issues of lack of visitation, unstable housing and unemployment, and her inability to deal with Child's severe behavioral issues within the next six months. The trial court entered Interim Findings and Recommendations but scheduled a third day of trial for ninety days after the hearing in order to give Mother an opportunity to remedy some of the issues which arose during the trial. Mother did not appear in person for that third day of trial. During that time, Mother did not submit to drug testing, attending only one counseling session, and visited Child only once. There was testimony that Child was doing "better" on the last day of the trial than he had been previously.

It is clear from the above, including the admissions of Mother, that substantial evidence supports the trial court's judgment. Mother was not able to care for Child

5

during the entire time that he was in the care of the Children's Division. Although she had been dealt a harsh hand with the death of one son and the behavioral issues of the second son, the reality facing the trial court was that Mother was given an opportunity to deal with her issues and Child's issues and was not able to do so at the time of trial. Mother had failed to rectify the conditions that caused Child to come into care, including her depression, her substance abuse, her living conditions (including involvement in a violent relationship), and her inability to put Child's needs first. She simply was not capable, and would not be capable, in the foreseeable future to parent Child. The above-cited evidence supports the judgment that Mother failed to rectify the conditions that brought Child into care. Mother's third point is denied.

In addition to finding that one of the statutory conditions had been met, the trial court had to determine whether the termination of Mother's parental rights was in the best interest of Child. We review that finding of the trial court for an abuse of discretion. *In re F.C.*, 211 S.W.3d 680, 684 (Mo.App. S.D. 2007). Although it is troubling that Child's behavior was the trigger that brought him into care and away from his family and that behavior regressed while in the care of experts in childcare, we cannot find an abuse of discretion in the findings that the termination was in Child's best interest. This is so because of the evidence indicating a limited emotional tie between Mother and Child, the limited visitation and contact between Mother and Child, and the testimony indicating that additional services would not bring about lasting parental adjustment enabling the return of Child to Mother within an ascertainable time. The case was pending for four years and, though there were events that would challenge the strongest of parents, Mother simply could not parent Child at the time of trial. Although Mother points to the

6

evidence that it will be difficult to find an adoptive home for Child due to the past frequent placements of Child, the court did not abuse its discretion in believing the testimony that it would be possible to find a permanent home for Child and that one of the difficulties in finding that permanent home was that Mother's parental rights had not been terminated. We are mindful of Mother's concern that Child will be parentless with little hope for adoption and a permanent home, but we cannot find that the trial court abused its discretion in finding that it was in Child's best interest that Mother's parental rights be terminated.

The judgment is affirmed.


Nancy Steffen Rahmeyer, J. - Opinion Author

Mary W. Sheffield, P.J. - Concurs

Don E. Burrell, J. - Concurs