

# Missouri Court of Appeals
## Southern District

### In Division

IN THE INTEREST OF: )
H.M.W. and W.E.L., )
children under seventeen years of age. )
  )
GREENE COUNTY JUVENILE OFFICE, )
  )
      Petitioner-Respondent, )
  )
      vs. )    Nos. SD37737, 37738
  )
R.W., )    **Filed: April 10, 2023**
  )
      Respondent-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

The Honorable Calvin R. Holden, Senior Judge

**AFFIRMED**

R.W. ("Mother") appeals the judgments of the trial court[1] that terminated her

parental rights in, to, and over her two minor children, H.M.W. ("Child 1"),[2] born in July,

---

[1] A judgment terminating Mother's parental rights was filed in each child's individual case. Mother filed a notice of appeal in each separate case, resulting in two appeals. This Court consolidated those appeals for all purposes by written order.

[2] The trial court terminated the parental rights of Child 1's father, T.R.I., in its judgment in Case. No. 20GK-JU00810, on the basis of abandonment, neglect, and failure to rectify. The trial court

1

2018, and W.E.L. ("Child 2"),[3] born in May, 2019, (collectively, the "Children"), on the basis of abuse and/or neglect under section 211.447.5(2), and failure to rectify under section 211.447.5(3).[4] The trial court further found termination of Mother's parental rights to be in the Children's best interest.

Mother does not contest the application of any of the statutory grounds for termination of her parental rights to the Children in this appeal. She asserts only one point relied on claiming the trial court abused its discretion in finding that termination of her parental rights was in the Children's best interest. Mother fails to demonstrate reversible error in her challenge to the trial court's determination that termination was in the Children's best interest, and we therefore find no such abuse of discretion occurred. We affirm the trial court's judgments.

**Standard of Review and Generally Applicable Legal Principles**

In reviewing a judgment that terminates parental rights, this Court reviews:

_____

further found termination of T.R.I.'s rights to be in Child 1's best interest. The termination of T.R.I.'s parental rights is not at issue in this appeal.

[3] The trial court terminated the parental rights of Child 2's father, H.E.L, in its judgment in Case No. 20GK-JU00811, after H.E.L. executed his General Consent to Termination of Parental Rights and Adoption in, to, and over Child 2, and the trial court reviewed, approved, and accepted H.E.L.'s consent, finding H.E.L. "voluntarily, knowingly, and freely consented in writing to the termination of his parental rights pursuant to Section 211.444 RSMo[.]" The termination of H.E.L.'s parental rights is not at issue in this appeal.

[4] Unless otherwise indicated, all statutory references are to RSMo Cum.Supp. 2021 (prior to the changes effective August 28, 2021), and all references to rules are to Missouri Court Rules (2022). The statute in effect on the date the petition to terminate was filed applies in determining the parties' substantive rights. *In the Interest of D.L.P.*, 638 S.W.3d 82, 88 n.1 (Mo. App. E.D. 2021). In both underlying cases, a juvenile officer filed a first amended petition to terminate on April 27, 2021, before the most recent amendments to section 211.447 became effective.

". . . whether clear, cogent, and convincing evidence[5] was presented to support a statutory ground for terminating parental rights under *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Therefore, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. . . .

Conflicting evidence will be reviewed in the light most favorable to the trial court's judgment. Appellate courts will defer to the trial court's credibility assessments. When the evidence poses two reasonable but different inferences, this Court is obligated to defer to the trial court's assessment of the evidence.

. . . .

After [an appellate court] determines that one or more statutory ground has been proven by clear, convincing, and cogent evidence, [the appellate court] must ask whether termination of parental rights was in the best interest of the child. At the trial level, the standard of proof for this best interest inquiry is a preponderance of the evidence; on appeal, the standard of review is abuse of discretion."

*In the Interest of J.P.B.*, 509 S.W.3d 84, 90 (Mo. banc 2017) (quoting *J.A.R. v. D.G.R.*, 426 S.W.3d 624, 626 (Mo. banc 2014)). "'In reviewing questions of fact, the reviewing court is to recognize that the circuit court is free to disbelieve any, all, or none of the evidence, and it is not the reviewing appellate court's role to re-evaluate the evidence through its own perspective.'" *Id.* (quoting *J.A.R.*, 426 S.W.3d at 627).

The party seeking termination bears the burden of proof at trial. *In the Interest of K.A.M.L.*, 644 S.W.3d 14, 20 (Mo. App. E.D. 2022). However, "[a]n appellant bears the

---

[5] "The clear, cogent and convincing standard of proof is met when the evidence instantly tilt[s] the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *S.S.S. v. C.V.S.*, 529 S.W.3d 811, 819 n.5 (Mo. banc 2017) (internal quotation marks and citation omitted). "This standard may be satisfied even when evidence contrary to the trial court's finding is presented or the evidence might support a different conclusion." *D.L.P.*, 638 S.W.3d at 89; *S.S.S.*, 529 S.W.3d at 819 n.5.

burden to overcome many presumptions on appeal, including the presumption that the circuit court's judgment is correct." ***Lollar v. Lollar***, 609 S.W.3d 41, 45 n.4 (Mo. banc 2020). In addition, "appellants always bear the burden of establishing error whatever the standard of review." ***City of De Soto v. Parson***, 625 S.W.3d 412, 416 n.3 (Mo. banc 2021).

A "juvenile court may terminate the rights of a parent to a child . . . if the court finds that the termination is in the best interest of the child and when it appears by clear, cogent and convincing evidence that grounds exist for termination pursuant to subsection 2, 4 or 5" of section 211.447.6. Section 211.447.7 sets forth seven enumerated best interest factors that are statutorily required to be included in every judgment "[w]hen considering whether to terminate the parent-child relationship pursuant to subsection 2 or 4 of this section or subdivision (1), (2), or (3) of subsection 5":

> (1) The emotional ties to the birth parent;
> (2) The extent to which the parent has maintained regular visitation or other contact with the child;
> (3) The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so including the time that the child is in the custody of the division or other child-placing agency;
> (4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;
> (5) The parent's disinterest in or lack of commitment to the child;
> (6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights;
> (7) Deliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm.

Section 211.447.7(1)-(7).

Here, the only issue before us on appeal relates to the trial court's best interest determination, which we review for an abuse of discretion. *In Interest of Z.S.C. and H.E.C.*, 659 S.W.3d 665, 667 (Mo. App. S.D. 2023). "The 'best interest' determination is a subjective assessment based on the totality of the circumstances and is discretionary." *K.A.M.L.*, 644 S.W.3d at 25; *In the Interest of M.K.S.*, 612 S.W.3d 260, 262 (Mo. App. S.D. 2020) (best interest determination is a subjective assessment that is not reweighed by the appellate court). "A [circuit] court abuses its discretion when a ruling is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *In the Interest of D.N.D.*, 646 S.W.3d 748, 751 (Mo. App. S.D. 2022) (internal quotation marks and citation omitted).

### Facts and Procedural Background

On January 1, 2020, Springfield Police Department patrol officer Stephen Layton ("Officer Layton") was dispatched to Cox North Hospital for a Department of Family Services ("DFS") assist with the Children's Division (the "Division"). According to the DFS worker, hospital staff hotlined parents for physical abuse who came to the hospital with a young child, Child 2, who had injuries not consistent with the story the parents gave to the hospital staff. Officer Layton observed that Child 2 had "a large bruise that covered his right cheek, red marks within the bruising on his cheek, bruising around his entire right eye, bruising on his right forehead near his temple, bruising on his right eyebrow, and his eye was swollen and looked like it was irritated."

Mother and Child 2's father indicated Child 2 was asleep when he sustained the injuries and they speculated the injuries were caused by Child 2's sibling, Child 1,

5

"potentially crawling in the crib while he was asleep and striking him with an Xbox controller." Mother was agitated that DFS and Springfield Police were called, but did not seem overly concerned that Child 2 was injured. Mother was argumentative towards staff and not welcoming toward DFS. Prior to Officer Layton arriving, she had punched a door hard enough to knock it off the rails when she was informed DFS was notified. Mother called several nurses names.

Officer Layton stepped out of the room and talked to the nurse who treated Child 2 and learned the information Mother and Child 2's father provided to him was not the same information that they provided to the nurse. At that time, Officer Layton agreed with DFS to divert the Children, and the parents suggested the Children be diverted to Child 2's father's parents.

After the Children were diverted, a team decision-making meeting ("TDM") was held at the Division. Mother and Child 2's father were present. Mother was very upset and irritable. A few times she raised her voice, slammed her hands on the table, and had to walk out of the meeting because she had gotten upset. At that time, Mother was not amenable to working with services. Mother admitted to having mental health needs, but she did not want help at that time. The Division could not assure safety of the Children with the parents so a referral was made to the Juvenile Office. The Children were adjudicated as neglected and/or abused in a jurisdictional hearing held in the Circuit Court of Greene County, Missouri, Juvenile Division. At the time of trial, the Children had been under the care and supervision of the trial court and in the temporary legal custody of the Division since January 10, 2020.

A treatment plan was created for Mother during a Family Support Team ("FST") meeting. Mother agreed to complete a psychological or psychiatric evaluation and follow the recommendations of the evaluation. Mother completed three evaluations. Mother failed to consistently follow through with the recommendations of the evaluations, including continuous therapy and medication management. Mother failed to sign releases for the Division to obtain records from medical doctors or prescribers.

While the Children were in the State's custody, Mother underwent counseling. First, she engaged in couple's counseling with Child 2's father in September, 2020. Mother was unemployed until the very end of the counseling sessions. Mother did not cook or clean or do the things that needed to be done in the home. Mother admitted she was depressed. Although Mother scheduled individual counseling sessions twice, she failed to show up both times, became upset with the counselor, and tried to blame the counselor for her failure to show up. Mother took medicine for her depression, but would stop taking it. Mother informed the counselor she had been previously diagnosed as bipolar. Mother never took responsibility for Child 2's injuries, she failed to take responsibility for situations, blamed others, and either minimized or made excuses. Mother failed to keep a clean and safe home and the home would have not been appropriate for the Children to return there during the time the counselor was working with Mother. Mother was very reactive and angry. She would cuss out the counselor, hang up on her, call her back, get upset, cuss again, and then hang up again. She sent the counselor "some ugly texts" blaming her. The counselor stopped providing couple's counseling to Mother and Child 2's father in January, 2021. Following that, Mother sent

the counselor another angry text in February blaming her and other people for what Mother had done.

Mother began working with a new therapist in April, 2021, through January, 2022. Mother attended weekly virtual appointments. During this time, Mother admitted the medication she was taking to regulate her moods for her bipolar diagnosis was too strong so she would sleep too hard, but she did not admit that she hurt Child 2. Mother also did marijuana, which kept her moods stable, but it was not managed by a mental health professional in terms of dosage or type. Mother was frustrated about a lot of things during her therapy sessions, including the case. Mother's relationship with Child 2's father was toxic. At times they lived together, and at other times she was homeless. The therapist stopped seeing Mother when she moved out of state to pursue a relationship. Mother did not work a full-time job, and she had continuous car problems. While Mother loves the Children and has a desire to work on skills, her mental health gets in the way, and she did not have the motivation and ability to follow through.

Mother and Child 2's father were allowed supervised visits with the Children at two separate times while they were in the State's custody. Initially, visits occurred six times from January to March, 2020, but Mother was only allowed to attend the first three visits because there were concerns with Mother so the Division was excluding her from visitation. Mother was very argumentative during the first couple of visits. Mother was more focused on verbalizing her frustrations toward the case than focused on what was going on in the visit. The supervisor had safety concerns in relation to Mother's ability to provide adequate supervision for the Children. During the last visit she was allowed to attend in February, 2020, Mother became upset with the case worker from the Division

because Mother wanted to talk about the case and was told that was not the time or place. Mother screamed and swore at the case worker. Because this visit occurred at a library and Mother's behavior was a disruption, a librarian came over and security was called. Security called law enforcement.

Weekly supervised visits occurred again with Mother, Child 2's father, and the Children from May, 2020, to January, 2021. During these visits, Mother and Child 2's father would get into arguments a lot in front of the Children. The supervisor had concerns for Mother's ability to parent the Children if Child 2's father was not present. If Mother could not get the Children to do what she wanted them to do, she would make Child 2's father do it. During the last visit, Mother got upset over putting different clothes on Child 2 because he spilt milk on the clothes she brought with her and changed him into at the start of the visit. Mother was cussing and screaming and was belligerent about the clothes. After the supervisor closed the door, Mother forced the door open and the door hit the supervisor and she fell into the wall. The Children's placement, who was also Child 2's father's mother ("Paternal Grandmother"), came to pick them up. Mother and Paternal Grandmother were in the parking lot yelling and screaming at each other, Mother slapped the glasses off Paternal Grandmother, and the glasses fell onto the concrete and broke. The supervisor ended up calling the police to come, Mother got "mouthy" with the police officer, and he arrested her. Mother had no additional visits after January, 2021, until July, 2021, because she refused to get back on medication management.

Mother's last visit with the Children occurred in July, 2021. Mother had some medical issues and was in some pain. She was more agitated that day. At the end of the

9

visit, Mother started talking about the case. Mother started swearing at the case worker and it escalated until Mother left after "flipping" off the case working in front of the Children. The Children were confused and "a little terrified" because they did not know what was happening.

Mother moved to Illinois in 2021 with a paramour. She lived in Illinois at the time of the trial. She lived in multiple places in Illinois. She has not had employment in Illinois and does not have a reliable source of transportation. Mother had law enforcement and legal issues in Illinois, including domestic violence issues. According to Mother's conversation with the case worker, she planned on staying in Illinois and not coming back to Missouri. However, Mother testified at trial her plan was to try and come back to Missouri, but if she did not she would stay in a permanent place in Hanson, Illinois. Mother has never paid a dollar of child support for the Children despite being ordered to pay $9.00 per month. The case worker testified that Mother was not in any better of a place now to care for the Children than she was when they came into care. The Division and the guardian ad litem recommended termination of Mother's parental rights over the Children so they could be free for adoption.

The trial court issued its judgments and orders terminating Mother's parental rights in, to, and over the Children on August 22, 2022. The trial court found, from clear, cogent, and convincing evidence, that two separate legal grounds for termination of Mother's parental rights were supported by the evidence - that the Children have been abused and/or neglected by the Mother as provided by section 211.447.5(2)(a)-(d), and failure to rectify in that the Children have been under the jurisdiction of the trial court for more than one year and the conditions that led to the assumption of jurisdiction or

10

conditions of a potentially harmful nature continue to exist and there is little likelihood those conditions can be remedied at an early date so that the Children could be returned the Mother in the near future as provided by section 211.447.5(3)(a)-(d). The trial court also found that termination of Mother's parental rights was in the Children's best interest as provided by sections 211.447.6 and 211.447.7(1)-(7).

Mother does not challenge the trial court's findings related to the abuse and/or neglect or failure to rectify statutory grounds for termination of her parental rights. However, to the extent these findings relate or pertain to the trial court's best interest findings, the trial court found the following facts support the two statutory grounds for termination:

Mother suffers from several severe mental conditions including Bipolar II disorder, Major Depressive Disorder, PTSD, Codependency, and Mixed Personality, none of which she has consistently treated or addressed. While Mother participated in therapy at times, she was very resistant to medication management. Mother was prescribed and used medical marijuana but was not working with a mental health provider in determining dosage or type of marijuana she was taking. Many of Mother's disorders cannot get better or be managed unless she is consistent with treatment. Mother was unable to provide any substantiating documentation of her participation in therapy or with properly taking prescribed medication. Mother's "changing stories of what she was doing when her child was injured, why she is now living in Illinois, what her involvement was in various domestic violence situations, and what physical and mental health needs she has" left the trial court unable to find her recounting of events as credible. Without consistent treatment, Mother's mental health needs will continue to impede her ability to

11

provide for the Children's needs, care, and safety. Mother knew or should have known that Child 2 was abused since she and the Children were the only people home when Child 2 was injured. The evidence established Mother neglected the Children for the two-and-one-half years that they were under the trial court's jurisdiction. Mother provided no financial support for the Children. Mother's contact with the Children was limited due to her conduct during visits. She became aggressive with the parent aide and the Children's placement "causing law enforcement to have to be called." Mother chose to leave Missouri and move to Illinois in late 2021 with a man she had only known for a short period of time. Mother remained there at the time of trial, leaving behind her Children and the services she was engaged in which prevented her from re-establishing visits with the Children. At no point during the two-and-one-half years that the Children have been in custody has Mother provided for the Children's needs. Mother failed to follow through with a treatment plan or maintain stable housing. Mother chooses to rely on others to support her, choosing to reside with unsafe and violent people. Mother fails to "make choices that would provide for safety of herself or the minor children."

Because Mother failed to challenge any of the trial court's factual findings supporting the statutory grounds for termination of her parental rights, we presume that both statutory grounds were proven by clear, cogent, and convincing evidence, and now consider Mother's alleged error asserted herein – whether the trial court abused its discretion in determining termination of Mother's parental rights was in the best interest of the Children.

The trial court made the following findings pertaining to Mother on each of the seven best interest factors listed in section 211.447.7 in the two judgments:[6]

[1]. The emotional ties to the birth parent: The evidence presented established that the child has not seen his [M]other since July 2021 and that at the last visit he was afraid of her due at least in part with her aggressive demeanor and her inconsistent contact. Since the visits with the [M]other have stopped the child has adjusted and is a happy and healthy little boy.

[2]. The extent to which the parent has maintained regular visitation or other contact with the child: The [M]other was initially consistent with visits, however, she continued to be inappropriate in the visits exhibiting contempt for the [C]hildren's placement and at times getting very agitated and aggressive, culminating with a visit in January 2021 when the [M]other became physically aggressive with the case worker and placement. The [M]other's visits were suspended and attempted to be restarted in July 2021, when she once again was aggressive in the visit scaring the minor child and sibling.[7] Since then the [M]other has not had visits and she has not been prevented from sending letters or cards and was permitted to make videos for the minor child and sibling, but she had not chosen to send any letters or cards and has only recorded a video on one occasion.

[3]. The extent of payment by parent for the cost of care and maintenance of the minor child when financially able to do so including the time that the minor child was in the custody of the Division or other child-placing agency: The [M]other has not provided any financial support for the minor child. The [M]other provided some in kind items when she had visits, but she has not provided any items since July 2021. There was no evidence presented that the [M]other could not have provided some nominal support.[8]

[4]. Additional services would not be likely to bring about a lasting parental adjustment so as to enable a return of the child to a parent within an ascertainable period of time: The evidence presented established that no additional services can be provided to the [M]other as she chose to move out of state where the case worker has no ability to refer services.[9]

___

[6] The court used slightly different language regarding some factors with respect to Child 1 and Child 2. We set forth the findings with respect to Child 2 and will further clarify any variance of language with respect to Child 1.

[7] With respect to Child 1, the phrase "and sibling" was not included.

[8] With respect to Child 1, the court used the same language but also referred to Child 1's father.

[9] With respect to Child 1, the court included an additional sentence pertaining to Child 1's father.

[5]. The [M]other has also shown a disinterest and lack of commitment by failing to pay the $9 in child support she has been assessed, by moving out of state, and by failing to take any responsibility for her current situation or for the reason the minor child was removed from her home.[10]

[6]. The conviction of the parent of a felony offense that the Court finds is of such a nature that the child will be deprived of a stable home for a period of years with the understanding the incarceration, standing alone, is not a proper ground for termination of parental rights: No evidence was presented that [Mother] has such a conviction.

[7]. Deliberate acts of the parent or acts of another, of which the parent knew or should have known, that subjected the child to a substantial risk of physical or mental harm: The minor child was taken into custody after he was abused in the home while the [M]other was supervising. The [M]other has denied causing the abuse and instead has blamed the minor child's sibling, who was a year and [a] half old, for the abuse.[11]

The trial court further expressly found in each judgment: (1) "The continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home"; (2) "The inability of the [M]other to provide proper care, custody, and control for the minor child is potentially harmful to the child should the child be placed with her";[12] and (3) "The minor child's guardian ad litem recommended that it was in the best interests of the minor child for the Court to terminate the parental rights of the [M]other . . . in, to, and over the minor child."

---

[10] With respect to Child 1, the court included an additional sentence pertaining to Child 1's father and with respect to Mother found, "The [M]other has also shown a disinterest and lack of commitment by failing to pay the $9 in child support she has been assessed and by moving out of state."

[11] With respect to Child 1, the court found, "The minor child was taken into custody after his sibling was abused in the home while the [M]other was supervising the child. The [M]other has denied causing the abuse and instead has blamed the minor child, who was a year and [a] half old, for the abuse."

[12] With respect to Child 1, the court also referred to Child 1's father.

Mother does not directly challenge any of these findings and evidence, but rather claims the trial court's discretionary and subjective assessment of these findings and evidence in the context of the totality of the circumstances is clearly against the logic of the circumstances before the trial court, and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. We disagree.

**Discussion**

Mother, in her sole point on appeal, claims "the court erred in finding that the factors when balanced favored termination of parental rights in that the court when balancing all factors abused its discretion in finding by a preponderance of the evidence that it was in the best interests of the [Children] to terminate parental rights. . . ." However, Mother concedes that, when examining the record in the light most favorable to the judgment, factors one, two, three, four, five, and seven of section 211.447.7 favor termination. As to the sixth factor, Mother argues that the trial court found "there were no convictions of a kind that would prevent the mother from providing a stable home in the case at bar." Mother asks this Court to find, after reviewing and balancing the factors, six of which she concedes support termination, that the decision of the trial court – that the best interest of the Children is served by terminating Mother's parental rights – "so shocks the conscience" that this Court should reverse the trial court's decision and remand for further proceedings. This Court does not find that the trial court abused its discretion in finding termination of Mother's parental rights was in the Children's best interest.

"There is no requirement, statutory or otherwise, that all seven of these factors must be negated before termination can take place; likewise, there is no minimum

number of negative factors necessary for termination." ***In the Interest of C.A.M.***, 282 S.W.3d 398, 409 (Mo. App. S.D. 2009). Rather, determining a child's best interest is a subjective assessment based on the totality of the circumstances. ***Id.***

Here, Mother presented no cognizable argument or theory as to why or how the trial court abused its discretion when six out of seven of the factors favor termination of Mother's parental rights, and Mother actually *agrees* that the trial court's findings on six of the seven factors favor termination of her parental rights. In fact, Mother does not directly challenge any of the trial court's findings and evidence, but rather loosely claims the decision of the trial court's judgments terminating her parental rights "so shock[] the conscience." In essence, Mother argues this Court should reweigh or rebalance the factors and fails to acknowledge the trial court's best interest determination is a subjective assessment that cannot be reweighed by this Court. As such, Mother's arguments related to her best interest challenge have no analytical or persuasive value.

Keeping our standard of review in mind, the trial court's detailed findings and summary of the evidence at trial clearly show careful consideration of the evidence and issues that are not arbitrary or unreasonable, and are certainly not against the logic of the circumstances. In the totality of the circumstances and viewing the evidence in the light most favorable to the trial court's findings, the trial court did not abuse its discretion in determining that termination of Mother's parental rights was in the Children's best interest. Mother's point is denied, and the trial court's judgments terminating Mother's parental rights to each child are affirmed.

16

JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

JACK A. L. GOODMAN, C.J. – CONCURS

GINGER K. GOOCH, J. – CONCURS