

# Missouri Court of Appeals
## Southern District

### In Division

IN THE INTEREST OF: )
E.M.F., N.A.F., and A.M.F., )
minor children under seventeen years of age,)
 )
GREENE COUNTY JUVENILE OFFICE, )
 )
              Petitioner-Respondent, )
 )
v. ) Nos. SD37944, SD37945, & SD37946
 ) Filed: **July 12, 2023**
J.A.F., )
 )
           Respondent-Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Calvin R. Holden, Senior Judge

### **AFFIRMED**

J.A.F. ("Father") appeals separate judgments terminating his parental rights to E.M.F.,

N.A.F., and A.M.F. (collectively, the "Children"). The appeals were consolidated for our

review. In two points on appeal, Father asserts the judgments terminating his parental rights on

the grounds of abandonment and neglect are in error because certain facts found under each ground are against the weight of the evidence.[1] We affirm the judgments of the trial court.

## Standard of Review

"A reviewing court will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence or erroneously declares or applies the law." *In re Q.A.H.*, 426 S.W.3d 7, 12 (Mo. banc 2014). "The trial court's judgment will only be reversed if this Court is left with a firm conviction that the judgment is wrong." *Id.*

We view the evidence in the light most favorable to the judgment. *J.A.R. v. D.G.R.*, 426 S.W.3d 624, 626 (Mo. banc 2014). "Appellate courts will defer to the trial court's credibility assessments. When the evidence poses two reasonable but different inferences, this Court is obligated to defer to the trial court's assessment of the evidence." *Id.* (quoting *In re Adoption of C.M.B.R.*, 332 S.W.3d 793, 815 (Mo. banc 2011), *abrogated on other grounds by S.S.S. v. C.V.S.*, 529 S.W.3d 811, 816 n.3 (Mo. banc 2017)). "[W]e are not free to credit evidence or inferences that favor the terminated parent. To the contrary, we must ignore these." *In the Interest of J.A.L.*, 547 S.W.3d 804, 812 (Mo.App. 2018) (quoting *In re Adoption of C.M.*, 414 S.W.3d 622, 629 (Mo.App. 2013)). "In reviewing questions of fact, the reviewing court is to recognize that the circuit court is free to disbelieve any, all, or none of the evidence, and it is not the reviewing appellate court's role to re-evaluate the evidence through its own perspective." *J.A.R.*, 426 S.W.3d at 627 (citing *Pearson v. Koster*, 367 S.W.3d 36, 44 (Mo. banc 2012)).

"To terminate parental rights, the trial court must find clear, cogent and convincing evidence of at least one of the grounds of termination outlined in section 211.447." *Q.A.H.*, 426

---

[1] The Children's mother ("Mother") consented in writing to the termination of her parental rights to the Children pursuant to Section 211.444. All statutory citations are to RSMo Cum. Supp. 2021.

S.W.3d at 12 (citing Section 211.447.6; ***C.M.B.R.***, 332 S.W.3d at 815-16).  The trial court must also determine that termination is in the best interest of the child.  ***Id.***

To present a challenge that a judgment is against the weight of the evidence, an appellant must complete four sequential steps:

> (1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
> (2) identify all of the favorable evidence in the record supporting the existence of that proposition;
> (3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,
> (4) demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

***Houston v. Crider***, 317 S.W.3d 178, 187 (Mo.App. 2010).

**Factual Background and Procedural History**

Father is the biological father of the Children and lives in West Virginia.  On November 3, 2021, a deputy juvenile officer with the Greene County Juvenile Office (the "Juvenile Office") filed petitions to terminate Father's parental rights to the Children.  On September 22, 2022, the trial court held a trial on the petitions.

At the trial, an investigator with the Greene County Children's Division (the "Children's Division") testified she received an assessment on September 22, 2020 alleging physical abuse at the home where the Children lived.  Two days later, on September 24, 2020, the investigator traveled to the home where the Children lived.   The Children lived in Missouri with Mother, four children unrelated to Father, and an adult male unrelated to Father.  The investigator had concerns about the living conditions at the home.  She asked Mother to clean the home and informed Mother the home would be reassessed.  The investigator later discovered

3

methamphetamine use by the adult male resident of the home, and the Children's Division ultimately referred the matter to the Juvenile Office and requested protective custody for the seven children.

An alternative care worker with the Children's Division testified the Children entered protective custody on October 14, 2020. Regarding Father's relationship with the Children, the alternative care worker testified:

> [I]nitially, the concerns … we had were neglect, lack of parental communication, lack of in-kind support. It's unknown how long [the Children] have been going without contact with [Father], as [Mother] did not have any contact information for him. He -- the [C]hildren didn't know him, so there was some concerns for, you know, almost like a parent abandoned them.

Father agreed to participate in parenting education recommended by Children's Division. Father reported he attended parenting classes in West Virginia, but the alternative care worker asked for documentation to support Father's self-reported attendance and received no documents. The alternative care worker testified all of Father's contact with the Children was virtual and inconsistent. Father's attendance was so inconsistent that the visitation schedule had to be reduced from three thirty-minute visits per week to one thirty-minute visit per week. The alternative care worker also testified that, based on her training and experience, "virtual visits, unfortunately, don't have the same impact as in-person visits. It's harder to create a bond and do activities together. So, virtual visits don't seem as interesting to children as an in-person visit would." The alternative care worker testified she was not aware of any in-kind support or child support provided to the Children by Father. Father testified $420 per month was withheld from his wages for child support for the Children paid to the State of Missouri.

On October 18, 2022, the trial court entered its judgments terminating Father's parental rights to the Children. The trial court found clear, cogent and convincing evidence that the

Children were abandoned by Father under Section 211.447.5(1)(b), neglected by Father under Section 211.447.5(2)(a)-(d), and that termination of Father's parental rights was in the Children's best interest. The trial court made detailed factual findings. Father appealed.

**Analysis**

Initially, we note that Father, in both of his points on appeal, asserts that several factual findings underlying the judgments are against the weight of the evidence but does not argue the judgments themselves are against the weight of the evidence. Father misunderstands our standard of review, which requires Father to prove the judgments themselves are against the weight of the evidence. *See Houston*, 317 S.W.3d at 187. Although Father recites the standard set out in *Houston*, Father asks us to reconsider certain issues of fact without explaining how those factual findings are essential to sustain the judgment and without setting forth the evidence against Father's position on those fact issues, both of which are required by *Houston*. An against-the-weight-of-the-evidence challenge "is not an opportunity for an appellant to receive a new factual determination from a different court." *Matter of A.L.R.*, 511 S.W.3d 408, 414 (Mo. banc 2017) (quoting *Estate of L.G.T.*, 442 S.W.3d 96, 116 (Mo.App. 2014)).

In Point I, Father argues the trial court's determination that the Children were abandoned by Father is error because it was against the weight of the evidence for the trial court to find that "virtual communications between Father and the [C]hildren were not a substitute for in-person contact[,]" and that "Father did not provide any financial or in-kind support for the [C]hildren during the pendency of the case." We disagree.

Under Section 211.447.5(1)(b), a child is abandoned if the child is two years of age or older at the time of filing of the termination petition and for a period of six months immediately prior to the filing of the termination petition, the parent has willfully, substantially, and

5

continuously neglected to provide the child with necessary care and protection. *Id.* "Intent of the parent to abandon may be inferred from evidence of his or her conduct." *In re P.L.O.*, 131 S.W.3d 782, 789 (Mo. banc 2004) (citing *In re Adoption of W.B.L.*, 681 S.W.2d 452, 455 (Mo. banc 1984)). "A full consideration of the parent's conduct means intent may be evidenced by not only the frequency of contacts and visits a parent has with a child but also the quality of the contacts and visits." *S.S.S.*, 529 S.W.3d at 816. If the quality of the contacts is not considered, then a parent's superficial contact with the child would suffice to stave off a finding of abandonment. *Id.* "The court may attach little or no weight to infrequent visitations, communications, or contributions." Section 211.447.8.

As to the virtual-communication issue, the trial court found:

The evidence established that [Father] resides in West Virginia. [Father] only travelled to Missouri twice since the [Children] came into care and only requested a visit with [the Children] on one of these two occasions. The caseworker, however, was unable to arrange the requested visit, because [Father] arrived in Missouri unannounced and could only stay in Missouri for a short period of time. [Father] has not had any in-person contact or communication with the [Children] since the [Children] came into care.

While [Father] has attended virtual visits with the [Children], virtual communication is not a substitute for in-person contact. When the [Children] came into care, [Father] had been absent from the [Children's lives] for a period of years, and virtual communication is an inadequate means to rebuild that relationship. Furthermore, [Father's] participation in virtual visits has been sporadic. Virtual visits were initially arranged for Mondays, Wednesdays, and Fridays; however, Fridays were eventually canceled due to [Father's] work schedule[]. [Father] continued to regularly miss visits on Mondays and Wednesdays as well, including in the week preceding the termination of parental rights trial. The caseworker testified that when [Father] misses scheduled visits, the [Children are] left waiting for up to 15 minutes until it becomes clear that [Father] is not going to appear. When the [Children] realize[] [Father] is not going to appear [they] become[] upset.

As to Father's failure to provide any financial or in-kind support for the Children, the trial court found Father had provided no such support:

6

[Father] did not provide any financial or in-kind support for the [Children] during the pendency of this case. [Father] was employed, and there was no evidence of anything that would have prevented [Father] from providing some sort of support or adequately communicating with the [Children].

The trial court's judgments terminating parental rights based on abandonment are not against the weight of the evidence. As to virtual visits, Father does not dispute he had only limited virtual contact with the Children and no in-person contact. Missouri law permits the trial court to consider the nature and quality of contacts in determining if a parent has abandoned a child for purposes of termination of parental rights. *S.S.S.*, 529 S.W.3d at 816; Section 211.447.8.

As to Father's failure to provide any financial or in-kind support, Father claims the Juvenile Office could have produced his pay stubs to support his trial testimony that $420 was deducted monthly from his wages to pay child support for the Children to the State of Missouri. An alternative care worker with the Children's Division testified she was not aware of any financial or in-kind support from Father to the Children. The trial court was free to believe the alternative care worker's testimony and to disbelieve Father's testimony, and we must defer to the trial court's credibility determinations. *J.A.R.*, 426 S.W.3d at 626. Father produced no documents to support his testimony that he had paid support, and the trial court did not have to find credible Father's unsupported testimony about child support he claimed to have paid. Point I is denied.

In Point II, Father asserts the trial court's determination that the Children were neglected by Father is error because it was against the weight of the evidence for the trial court to find that "Father did not provide any financial or in-kind support for the [C]hildren during the pendency of the case." The trial court's judgments terminating parental rights based on neglect are not against the weight of the evidence. Father's identical argument in Point II about financial or in-

7

kind support fails for the reasons we set out in addressing the same argument in Point I. Point II is denied.

## Conclusion

The judgments of the trial court are affirmed.


GINGER K. GOOCH, J. – OPINION AUTHOR

JACK A. L. GOODMAN, C. J. – CONCURS

BECKY J.W. BORTHWICK, J. – CONCURS